249 So.2d 844

**Joseph Riley BEASLEY**

v.

**MacDONALD ENGINEERING CO.,
a Corp., et al.**

**6 Div. 709.**

Supreme Court of Alabama.

June 30, 1971.

William M. Acker, Jr., Francis H. Hare, and Edward L. Hardin, Jr., Birmingham, for appellant.

London, Yancey, Clark & Allen and Braxton W. Ashe, Birmingham, for appellee Band-It Co., Inc.

Spain, Gillon, Riley, Tate & Ansley and Ollie L. Blan, Jr., Birmingham, for appellees Mason & Dulion Co., Inc. of Alabama and Sullivan, Long & Hagerty. Inc.

Rives, Peterson, Pettus, Conway & Burge and Edgar M. Elliott, Birmingham, for appellee MacDonald Engineering Co.

Sadler, Sadler, Sullivan & Sharp, Birmingham, for appellee Liberty Mut. Ins. Co.

James E. Simpson, Birmingham, for appellee Alabama Gas Co.

C. A. Stewart, Jr., and Robert B. Huie, Birmingham, for appellee Raybestos Manhattan, Inc.

SIMPSON, Justice.

On rehearing, the original opinion is withdrawn and the following is substituted therefor as the opinion of the court.

This appeal is from a final judgment of nonsuit entered by the Circuit Court for the Tenth Judicial Circuit on April 18, 1969.

The appellant (plaintiff) filed suit in the Circuit Court for the Tenth Judicial Circuit against MacDonald Engineering Company; F. L. Smidth Company; Raybestos-Manhattan, Inc.; Sullivan, Long & Hagerty, Inc.; Mason & Dulion Co., Inc. of Alabama; Band-It Company, Inc.; Alabama Gas Corporation; and Liberty Mutual Insurance Company, seeking to recover damages for injuries which he sustained in an explosion of natural gas occurring near the lime kiln where he was working at the Powderly plant of Alpha-Portland Cement Company in Birmingham, Alabama.

The plaintiff was not an employee of any of the named defendants. Each defendant was charged with a particular act of negligence, alleged to have combined and concurred to proximately cause plaintiff's injuries. Basically, the allegations were that a section of defective rubber hose contained within a badly designed fuel injection system became disconnected, causing the natural gas to suddenly escape and explode. F. L. Smidth & Company is out of the case on a motion to quash service, the plaintiff not complaining here of that ruling. Stated generally the claims against the defendants, MacDonald Engineering; F. L. Smidth; Raybestos-Manhattan; Sullivan, Long & Hagerty; Mason & Dulion; and Band-It Company are all based upon a theory of manufacturer's liability. The claim against Liberty Mutual is based upon its undertaking to provide safety engineering at the Alpha-Portland premises. The claim against Alabama Gas is based on allegations of its failure to warn of an obvious defect after direct access to the

defect by an expert employee of Alabama Gas.

I. *We look first to the Liberty Mutual case.*

Resolution of the issues with respect to Liberty Mutual requires two determinations:

First, whether the plaintiff has stated a valid common-law action against Liberty Mutual in this case; second, if so, whether the plaintiff's cause of action against Liberty Mutual had been taken from him by the Alabama Workmen's Compensation Act.

A. *The common-law question.*

We see no occasion to refer to the averments of each of the four counts of the amended complaint. Plaintiff's cause of action against Liberty Mutual is stated in Count Four of the amended complaint in the following language:

"Plaintiff avers that prior to, to-wit, March 11, 1965, defendant, Liberty Mutual Insurance Company, a corporation, had and maintained the Workmen's Compensation liability insurance coverage on said cement plant at Powderly owned by plaintiff's said employer, Alpha-Portland Cement Company; that said defendant had maintained said insurance coverage for a considerable period of time prior to, to-wit, March 11, 1965; that pursuant to representations contained in said defendant's advertising and promotion of its said Workmen's Compensation insurance and pursuant to and in compliance with the terms of its insurance policy covering said plant, said defendant prior to, to-wit, March 11, 1965, undertook to inspect the said plant at Powderly in order to determine its safety and to improve and to promote its safety, and said defendant further undertook to provide a safety engineering service to said plant; that one or more of said defendant's employees, acting within the line and scope of his or their employment for said defendant, on more than one occasion prior to, to-wit, March 11, 1965, actually entered the said plant and actually entered the room in the plant where the kiln and the rubber hose here involved were located, for the said purposes of inspection and safety engineering, but that on those occasions they negligently failed to perform said inspection and safety engineering service properly; that said defendant negligently failed to advise plaintiff's said employer to correct an unsafe and dangerous condition as to the said rubber hose in the fuel injection system, which said condition would have been obvious to any one skilled as a safety engineer, and which said rubber hose became disconnected at the time of the accident. Said defendant's said employee or employees either knew of the said unsafe and dangerous condition or should have known it by an exercise of reasonable diligence. The said obviously unsafe condition consisted of the use of a section of brittle rubber hose, not securely fastened, in a high pressure gas line. Plaintiff and other employees of Alpha-Portland Cement Company in said plant knew of the said undertakings by said defendant to inspect and to provide a safety engineering service to the plant and knew of the actual presence of one or more of defendant's employees in the plant for said purposes before, to-wit, March 11, 1965 and plaintiff relied upon said undertakings for his safety. As a proximate consequence of said negligence, the rubber hose did become disconnected near the kiln, the gas ignited and plaintiff was injured and damaged as hereinafter set forth."

It is the contention of Liberty Mutual, as raised by its demurrer, that the complaint herein is defective in that it does not allege any common-law or statutory duty owed by Liberty Mutual to the plaintiff in these circumstances. The question is, as we see it, whether or not the complaint states a cause of action under the common

law arising from the negligent performance of a voluntary undertaking.

This theory originated with the case of Coggs v. Bernard, 2 Lord Raymond 909. Since then it has come to be recognized that liability can arise from the negligent performance of a voluntary undertaking. This state, at least as early as 1911, recognized that " 'when a person undertakes an employment, which requires care and skill, whether for reward or not, a failure to exert the measure of care and skill appropriate to the measure of such employment is negligence for which an action will lie.' " Parker & Bro. v. Hodgson, 172 Ala. 632, 635, 55 So. 818, 819. There it was held that while an excavator on an adjoining lot was not under a duty " 'to brace, underpin or otherwise protect the walls of buildings on adjoining lands' * * * yet if he 'undertakes to do this, he is liable for failure to use reasonable skill and care in the performance of the work.' " Citing 18 Cyc. 550; City of Covington, etc. v. Geyler, etc., 93 Ky. 275, 281, 19 S.W. 741. To like effect is Macke v. Sutterer, 224 Ala. 681, 141 So. 651 (1932), where a count was held good against demurrer where the "gravamen of the count is the negligence of the defendants in performing the work which they voluntarily undertook, and as a proximate consequence of such negligence the plaintiff suffered injuries." This court went on to say,

> "The subject-matter of the defendants' voluntary undertaking as alleged * * * was the rear steps of the building occupied by the plaintiff as a residence, and the voluntary undertaking was to repair the steps so as to make them reasonably safe for use, and, if defendants failed to so repair the steps in a workmanlike manner so as to make them reasonably safe, and as a proximate consequence the plaintiff was injured, the defendants were liable. Cairnes v. Hillman Drug Co., 214 Ala. 545, 108 So. 362."

This rule has been stated by the American Law Institute, Restatement of the Law, Second, Torts 2d, § 324(a), as follows:

> "Liability to third persons for negligent performance of undertaking. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> "(a) his failure to exercise reasonable care increases the risk of such harm, or
>
> "(b) he has undertaken to perform a duty owed by the other to the third person, or
>
> "(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

In this case it is not questioned that the employer, Alpha-Portland, owes a duty to its employees to provide a reasonably safe place to work. It is not disputed that Liberty Mutual was not under any obligation to undertake this duty itself. However, it is alleged that Liberty Mutual did undertake to inspect the premises for safety and to provide safety inspections. Having done so, under the common law as expressed in our cases, Liberty Mutual was under a duty to use due care in the performance of this undertaking. As Justice Cardozo said, "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425.

It was in recognition of this common-law theory of liability—i. e., that one who volunteers to act though under no duty to do so, is thereafter charged with the duty of acting carefully—that legislatures have passed the so-called Good Samaritan stat-

utes abrogating the common law in certain circumstances. These statutes immunize volunteers acting gratuitously from any common-law liability for their acts or omissions at the scenes of accidents or in emergencies. See Title 7, § 121(1). Were there no common-law liability, there would be no need for such legislation.

It is agreed that Alabama has not heretofore had occasion to apply these principles in a case like the present one. Other jurisdictions have. In Nelson v. Union Wire Rope Corp., 31 Ill.2d 69, 199 N.E.2d 769 (1964), the Supreme Court of Illinois considered the question in a case where the complaint alleged that American Mutual Insurance Company (the Workmen's Compensation carrier) had gratuitously undertaken to make safety inspections of the practices and equipment of its insured (plaintiff's employer) and had carelessly and negligently performed the inspections, as a proximate consequence of which the plaintiffs were injured and killed. The court said:

> "There is respectable authority, old and new, that gratuitous inspections by insurers may be made under such circumstances as to create an enforceable duty to persons known and unknown."

Cases so holding include: Smith v. American Employers' Insurance Co., 102 N.H. 530, 163 A.2d 564; Hartford Steam Boiler Inspection & Insurance Co. v. Pabst Brewing Co. (7th Cir.) 201 F. 617; Van Winkle v. American Steam Boiler Co., 52 N.J.L. 240, 19 A. 472; Sheridan v. Aetna Casualty & Surety Co., 3 Wash.2d 423, 100 P.2d 1024; Bollin v. Elevator Construction & Repair Co., 361 Pa. 7, 63 A.2d 19, 6 A.L.R. 2d 277; Fabricius v. Montgomery Elevator Company, 254 Iowa 1319, 121 N.W.2d 361.

As stated by Judge Godbold of the U. S. Court of Appeals for the 5th Circuit, "There is no doubt but that a private corporation is liable when it undertakes a duty of inspection, negligently performs that inspection, and the negligent performance causes injury to another." Hill v. U. S. F. & G., (5 Cir. 1970) 428 F.2d 112 (Ms.).

We believe these cases are consistent with Alabama law on the question of common-law liability. Some courts, as did the Illinois Court in Nelson, supra, have discussed the ancient distinction between misfeasance and non-feasance, a generally discredited distinction and one which does not concern us here. The allegation is that of misfeasance in this case. Here, as in Nelson, the theory is that the defendant, Liberty Mutual gratuitously undertook to make safety inspections at the plant of Alpha-Portland, and that it negligently performed these inspections, so that plaintiff was injured. This allegation charges misfeasance.

Nor need we tarry on the question of whether plaintiff must allege reliance. He has done so here. Any discussion of whether such an allegation is necessary would be mere dictum.

This brings us to the consideration of the next issue with respect to Liberty Mutual:

B. *Has the Alabama legislature abrogated this common-law action by enacting the Alabama Workmen's Compensation Act?*

The common law of England is the rule of decision in Alabama except as it may be altered or repealed by the legislature. Title 1, § 3, Code of Alabama.

It is earnestly insisted by Liberty Mutual that the Alabama statute by its language has immunized Liberty Mutual from liability in a suit by an employee injured in the course of his employment, because the employer, Liberty Mutual's insured, is no longer liable for that liability. In other words, Liberty Mutual's contention is that it stands in the shoes of Alpha-Portland in this case. Of necessity this compels a construction of this statute. So viewed,

the action taken by other courts faced with the same question under other statutes, though helpful, is not overly persuasive.

To begin, it is contended by Liberty Mutual that the Alabama statute disposes of the issue because its language unmistakably identifies the carrier with the employer. Title 26, § 262(d), the definition portion of our statute, provides

"The term 'employer' * * * shall, if the employer is insured, include his insurer as far as applicable * * *."

Section 272, the exclusive remedy section, is as follows:

"* * * no employer included within the terms of this chapter, shall be held civilly liable for any personal injury to or death of any workman due to accident while engaged in the service or business of his employer * * *."

Section 312:

"Where the injury or death * * * was caused under circumstances also creating a legal liability * * * on the part of any party other than the employer * * * the employee * * * may bring an action against such other party to recover damages for such injury * * *."

If the plaintiff's common-law remedy against Liberty Mutual has been legislated away, it is because § 262(d) requires the conclusion that "employer" as used in § 272 and § 312 includes the insurer. We are not persuaded that such a construction of § 272 or § 312 is dictated by § 262(d).

The first court faced with the question in a case involving alleged negligence in safety inspections was New Hampshire in Smith v. American Employers' Insurance Co., 102 N.H. 530, 163 A.2d 564 (1960). There the defendant insurer had conducted monthly inspections of the employer's plant, including the tank which exploded causing plaintiff's injuries. It was con-

ceded that a common-law action had been stated, the court stating "* * * it is a basic principle of our jurisprudence that one who undertakes to act, even gratuitously, may be liable to persons injured by his failure to use due care". The defendant, however, contended that the New Hampshire Workmen's Compensation statute deprived the plaintiff of her right to proceed at common law against it. The New Hampshire statute, like ours, allowed the employee to proceed with any common-law remedy against "some person other than the employer". The court held that the insurance carrier was a person "other than the employer" and that the suit would lie. The court failed to find any legislative intent to abrogate the common-law remedy against the insurance company.

Following *Smith*, the Iowa Court considered in Fabricius v. Montgomery Elevator Co., 254 Iowa 1319, 121 N.W.2d 361 (1963) the same question—an action against the insurer for negligent inspection gratuitously undertaken.

There the court said:

"If the employee's common law action is taken from him, what has done so? Certainly it cannot be the insurance policy. We do not find a statute that imperatively compels that result. It does not deal with that subject matter."

The Iowa Court found the Iowa statute deficient in expressing clearly an intention to take away a common-law right and sustained the cause of action under the familiar rule of statutory construction admonishing against construing a statute to abrogate the common law unless that result is required by its language. Not all Workmen's Compensation statutes are unclear in this regard. Among those that virtually dispose of the issue are the following:

"* * * nor shall such employer or the insurance carrier, if any, insuring such employer's liability under this chapter be subject to any other liability what-

soever · * * *." Colo.Rev.Stat.Ann.; § 81–3–2 (1967).

"The insurer of an employer is subject to the employer's liabilities and entitled to his rights and remedies under this chapter as far as applicable." Hawaii Rev.Stat., § 386–1 (1968).

Ill.Rev.Stat., Chap. 48, § 138.5 (1967) amended Pub.Act.No. 76–282, § 5 (July 1, 1969) extends immunity beyond the employer to "his insurer, his broker, any service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them."

" * * * he or those conducting his business and his workmen's compensation insurance carrier shall be liable * * * only to the extent and in the manner herein specified." Ind.Stat.Ann., § 40–1205 (1965).

"The exemption from liability given to an employer under this section is also extended to the employer's insurer * * *". Or.Rev.Stat., § 656.018(3) (1967).

"Such insurer shall assume the employer's liability hereunder and shall be entitled to all of the employer's immunities and protection hereunder * * *." Pa. Stat.Ann., Title 77, § 501 (1967).

Compensation is made the exclusive remedy against "the employer and the workmen's compensation insurance carrier". Wis.Stat.Ann., (1957) § 102.03(2). This statute was amended in 1965 to provide:

"The furnishing of, or failure to furnish, safety inspection or advisory services intended to reduce the likelihood of injury, death or loss shall not subject the insurer * * * to liability for damages from injury, death or loss occurring as a result of any act or omission in the course of such services." Wis.Stat.Ann., § 895.44 (1966).

There are a number of statutes which define employer in the same manner as the Alabama one, viz., "The term 'employer' * * * shall if the employer is insured, include his insurer as far as applicable", e. g., Delaware [Del.Code Ann., Title 19, § 2301 (1953)]; Georgia [Ga.Code Ann., § 114–101 (1956)]; Virginia [Va.Code Ann., § 65.1–3 (1950)]. Virginia courts, however, have limited the third party suits in cases like this to "a stranger to the business".

The *Nelson* case, supra, was decided by the Illinois Court in 1964. After concluding that a common-law remedy existed, the court then turned to the insurer's contention that Florida's (under whose law the case was tried) Workmen's Compensation Act gave it immunity from suit as a third-party tort-feasor. It was observed that the question depended on whether there was anything in the Florida Act which deprived plaintiffs of their rights. The Florida statute expressly preserved (like ours) to an injured employee a concurrent remedy against a third-party tort-feasor, without defining who was a "third party". The court concluded that under ordinary rules of statutory construction, it could not read into the statute a provision which was in derogation of the common law. The court said:

"Nowhere does the Florida Act provide that the compensation act shall be the exclusive remedy against the employer's carrier, or provide that such carrier shall enjoy immunity from suit as a third party tort-feasor, and for us to read those provisions into it would be to ignore the stern and persistent admonition of the Florida courts that the common-law action of an injured workman is preserved unless there is something in the act which takes it away."

The court went on to note that in some sections of the act the alternative phrase "employer or his insured" was used, including the section preserving an action against third parties (the section equivalent to our § 312). The court found a lack of

legislative intent to equate the employer and insurer for all purposes—since the alternative phrase was not used in the exclusive remedy section, nor the definition section.

Here it is urged that since § 262(d) of our statute defines "employer" to include his insurer insofar as applicable, this evinces a legislative intent to extend the exclusive remedy to the insurer. We cannot agree. If the legislature had intended § 262(d) to require reading the word "employer" to include "his insurer" for all purposes wherever the word employer was used in the Alabama Act, there would have been absolutely no necessity for amending § 312, extending to the insurer subrogation rights which had been given to the "employer" to begin with. In other words, it took an amendment to the statute to make "employer" include insurer in this section, notwithstanding the definition of that word in the original enactment in § 262(d) (1939 amendment).

In Brown v. Travelers Insurance Company, 434 Pa. 507, 254 A.2d 27, the insurer argued for immunity under the Pennsylvania Act providing:

> " 'The term "Employer", when used in this article, shall mean the employer as defined in article one of this act * * or his insurer if such insurer has assured the employer's liability * * *.' "

A majority of the court interpreted the act to mean that the definition of the act in the quoted provision extended throughout the act, including the employer immunity section. The majority admitted, however, "that the question is not free from doubt on the face of the statute".

■ The question is not free from doubt on the face of the Alabama statute. But it is because of that doubt that we are not free to adopt the construction urged by Liberty Mutual. There is a presumption that the legislature did not intend to make any alteration in the law beyond what it declares either expressly or by unmistakable implication. Ala.Dig., Statutes, ⊜194, 222.

The majority opinion in the *Brown* case was impressed by the fact that several jurisdictions had reached a similar result, i. e., finding immunity under various statutes. As noted in the dissenting opinion in *Brown* "that argument [counting jurisdictions] is never a particularly powerful one and is even less so in this case where a particular state's statute must be construed".

Perhaps the numerical majority of courts considering this question have found a legislative intent to equate the employer and insurer for purposes of immunity from common-law liability. The cases are of limited value to us in construing our own statute, and most of them take what has been called a "conceptual" approach to the problem, as we have done. That is, these cases turn on the language of the statutes and the court's conclusion that the carrier was meant to be assimilated with the employer. See Larson, Workmen's Compensation Insurer as Suable Third Party, 1969 Duke Law Journal 1117. Other courts have reached a different result according to this author by taking a functional approach, deciding the case on the basis of the function performed by the carrier—whether it is a duty imposed by the statute or not.

We are impressed with the reasoning of Prof. Larson. The role of the insurance company in the workmen's compensation scheme is to provide financial responsibility in exchange for a stated premium. Its basic role says Larson is paying:

> "But it is not of the essence of the compensation process that the carrier should step out of its fundamental role as financial guarantor and payor and go into the safety inspection service or medical clinic business directly. There is a big difference. If the carrier merely puts up the money and the employee obtains medical services from an independent physician or clinic, the employee in case of malpractice has someone he can sue. But, if the carrier performs the

service directly and if third-party liability is destroyed [by equating the carrier with the employer], the employee has no one to sue."

The same reasoning applies to performing safety engineering services. The role of the carrier is to respond financially in case of injury to employees of its insured. If safety engineering is negligently performed by one "other than the employer" and the employee is injured, he can proceed against the safety engineer.

Larson concludes therefore that:

" * * * a distinction should be drawn between the carrier's function of payment for benefits and services, on the one hand, and, on the other, any function it assumes in the way of direct or physical performance of services related to the act. For negligent performance of the latter it should be liable in tort as 'a person other than the employer'.

* * * * * *

"The clearest case for liability, then, is that in which the carrier actually performs or controls the performance of the services that caused the harm. And under the test of control, the carrier that actually performs safety inspections should logically be suable."

■ We find this logic compelling. Here Liberty Mutual is wearing two hats and performing two roles. In its role of supplying of the financial responsibility required of the employer under the act, it is entitled to all of the rights of its insured under the act. In its role of safety engineer it is entitled to no more protection than the law would give to any other in that role. It certainly would have a competitive advantage over other safety engineers if it would claim immunity from common-law liability simply because it also writes the workmen's compensation coverage for the employer.

In most, if not all, of the cases in other jurisdictions a policy argument was advanced which not infrequently was the basis for decision. That is that safety inspections by insurance carriers will be discontinued if they are to be held liable for negligence in making them and employees and their families will be the ultimate losers. Matthews v. Liberty Mutual Insurance Co., 354 Mass. 470, 238 N.E.2d 348 (1968). Several courts have responded to this argument in varying ways. See Mays v. Liberty Mutual Ins. Co., 323 F.2d 174 (3rd Cir., 1963). In Fabricius v. Montgomery Elevator Co., 254 Iowa 1319, 121 N.W.2d 361 (1963), the court dispensed with this contention by saying that no inspection at all is preferable to a negligent inspection. Most, however, in every case where it was considered, have viewed it as we do—questions of public policy are for the legislature. In this connection appellee points out that at least four states have amended their statutes to provide for immunity for insurance carriers since decisions on the subject have been rendered. This strengthens the plaintiff's contentions that a common-law remedy exists and that in the absence of express language to that effect, it is not abrogated by the workmen's compensation statutes.

Our conclusion is that the trial court erroneously sustained Liberty Mutual's demurrer to Count Four of the complaint as last amended.

II. *The Alabama Gas Case.*

The allegations with respect to Alabama Gas are as follows:

"Plaintiff avers that on several occasions prior to, to-wit March 11, 1965 * * * the manager of the industrial engineering department of defendant, Alabama Gas Corporation, himself an engineer with specific training and experience in natural gas transmission and natural gas safety, while acting within the line and scope of his employment for said defendant, and also while holding himself out as a consultant to plaintiff's said employer, Alpha Portland Cement Company, as to problems involving natural gas as a fuel in the said plant, en-

tered the premises of plaintiff's said employer at Powderly on one or more occasions * * * and on more than one occasion was physically close to the said kiln and said rubber hose involved in the subject accident and was within clear view by eyesight of the said rubber hose, which plaintiff avers was and appeared to be on each of said occasions obviously dangerous and unsafe from a visual examination, and which would have clearly appeared to be dangerous and unsafe to a reasonable person skilled in the field of natural gas transmission and safety."

█ We believe the above allegations fail to state facts necessary to show any duty owed by Alabama Gas to the plaintiff. The allegations that the "employee entered the premises", was "physically present in the plant" and "within eyesight of the hose" are insufficient to show any undertaking on the part of Alabama Gas to inspect. We think Triplett v. Alabama Power Co., 213 Ala. 190, 104 So. 248 dispositive. There the holding was that although an employee of the gas company connected a service pipe to a heater, lit the heater, and stated that it was all right, the gas company was not liable for injuries from asphyxiation resulting from a defect in the heater. The court based its conclusion on the fact that no duty to inspect was shown. As we view the complaint here, we find it defective for the same reason, absent an allegation that an inspection was actually undertaken and negligently performed. It is that feature which distinguishes the present case from Alabama Utilities Service Co. v. Hammond, 225 Ala. 657, 144 So. 822, on which plaintiff relies. In that case the allegation was that the gas company "undertook to adjust said heater * * * and did said adjusting in so careless and negligent a manner * * * [etc.]."

It was held that the complaint alleged a duty. But there was an undertaking here to adjust and an allegation of negligent performance of that duty. There is no analogous allegation here.

The case as to Alabama Gas is affirmed.

III. *All other defendants.*

█ Appellees MacDonald Engineering; Band-It; Sullivan, Long & Hagerty; Raybestos-Manhattan, Inc.; and Mason & Dulion have filed motions to affirm the judgment of the trial court sustaining demurrers to the complaint as it relates to them. The motions raise the point that the judgment should be affirmed because Supreme Court Rule 9 has not been complied with. We agree. We think the assignments of error as to these appellees were insufficiently argued to invite review. See cases collated at 2–A Ala.Dig., Appeal & Error, ☞1079.

In conclusion the judgment appealed from is reversed as to Liberty Mutual and affirmed as to all other defendants.

Affirmed in part, and in part reversed and remanded.

MERRILL, COLEMAN, BLOODWORTH and McCALL, JJ., concur.

LAWSON, HARWOOD and MADDOX, JJ., dissent.

MADDOX, Justice (dissenting).

I concur in the opinion in all respects except that portion which holds that Liberty Mutual Insurance Company as the compensation carrier is not immune from a third-party suit. I, therefore, respectfully dissent from the conclusion reached by the majority that the trial court erroneously sustained Liberty Mutual's demurrer to Count Four of the Complaint as last amended.

Under our Workmen's Compensation laws, I think Liberty Mutual, as the compensation carrier, is not a "third person" for the purpose of a tort suit based upon its alleged negligence in conducting a safety inspection. We need not decide under what circumstances a compensation carrier could be liable as a third party tortfeasor.

I recognize that there has been a dramatic and fast-moving development in the law of third party liability since the first decision was reached in another jurisdiction that the compensation carrier could be sued as a third-party tortfeasor. This is the first time we have been asked to add our thinking, and I feel that the majority has made a mistake on this our first case. As I view the issue, we need only interpret our statute, which I think is materially different from the statutes being interpreted in the opinions cited by the majority in reaching their conclusion.

In any event, an analysis of the views of the other courts shows that the law in this area is still in the formative stage, and there is widespread disagreement, not only between different jurisdictions but also among judges on the same court. In some states the Legislatures have enacted statutes to reverse or confirm judicial holdings.

The majority has set out many of the decisions from other jurisdictions which have considered the question. There are decisions both ways—some holding the compensation carrier to be subject to a third-party suit, others holding the contrary.[1] The majority of these decisions would probably support Liberty Mutual's position of immunity from suit, but I think it unnecessary, and probably unwise, to "count jurisdictions" because in some of them statutory backgrounds vary so widely that no meaningful comparison can be made. Courts construing statutes similar to ours appear to reach the same conclusion I would reach in this case.[2]

Our Workmen's Compensation Act, it seems to me, clearly shows that the compensation carrier is meant to be assimilated to the employer. Title 26, § 262(d), Code of Alabama, 1940, in pertinent parts, reads:

"The term 'employer' * * * shall if the employer is insured, include his insurer as far as applicable * * *"

I believe that the majority specifically fell into error when they concluded that:
"* * * If the Legislature had intended § 262(d) to require reading the word 'employer' to include 'his insurer' for all purposes wherever the word employer was used in the Alabama Act, there would have been absolutely no necessity for amending § 312,[3] extending to the insurer subrogation rights which had been given to the 'employer' to begin with. * * *" (Footnote added)

I think the provisions of § 312 relating to subrogation claims to which the majority attaches great significance are purely procedural and in no way limit, restrict or modify the definition of "employer" contained in § 262(d). As a matter of fact, Professor Larson, who is quoted extensively by the majority, thinks that our statutory definition of "employer" virtually disposes of the question of immunity of the compensation carrier. He writes:

"The main outlines of the controversy are by now sufficiently clear to permit a systematic analysis of this volatile and hotly-contested issue.

---

1. See collection of cases, Larson's Workmen's Compensation Law, Vol. 2, Section 72.90, p. 226.28.

2. Illustrative cases are Williams v. U. S. F. & G., 358 F.2d 799 (4 Cir., 1966) and Brown v. Travelers Ins. Co., 434 Pa. 507, 254 A.2d 27 (1969).

3. The portion of § 312 to which the majority refers reads:
   " * * * In the event the injured employee, or in case of his death, his

dependents, do not file suit against such other party to recover damages within the time allowed by law, the employer or *the insurance carrier* for the employer shall be allowed an additional period of six months within which to bring suit against such other party * * *." (Emphasis added.)

"One may begin by identifying two approaches to the question, which might be called the conceptual and the functional.

"The conceptual approach asks: who *is* the carrier? Is he a third party?

"The functional approach asks: what was the carrier *doing?* And what was the relation of that function to the act?

"Under the first approach, the emphasis is on trying to extract from the language of the act any clues on whether the carrier was meant to be assimilated to the employer, or in any other way excluded from the third-party category.

"For the sake of completeness, we may begin with statutes that virtually dispose of the issue by express language. Among these statutes, some of which, as we have seen, were deliberately enacted to reverse or confirm judicial holdings, are those of Alabama, Colorado, Delaware, Georgia, Hawaii, Illinois, Indiana, Iowa, Maine, Missouri, Nebraska, New Hampshire, New Mexico, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Vermont, Virginia and Wisconsin."

See also: Comments, The Workmen's Compensation Insurance Carrier as a Third Party Tortfeasor, 1 Conn.L.Rev. 183, 185.

The language of both § 262(d) and § 272[4] of Title 26, in my judgment, excludes all rights and remedies of the employee injured in the course of his employment other than those remedies granted under the Workmen's Compensation Act. In view of this, I feel that my brothers in the majority have failed to give force to our statutes and as a consequence have unwit-

tingly amended our Workmen's Compensation laws. I, therefore, respectfully dissent.

LAWSON, and HARWOOD, JJ., concur.

---

4. "The rights and remedies herein granted to an employee shall exclude all other rights and remedies of said employee, his personal representative, parent, dependents or next of kin, at common law, by statute or otherwise on account of said injury, loss of services or death; and except as herein provided in article 1 and article 2 (as the case may be) of this chapter, no employer included within the terms of this chapter, shall be held civilly liable for any personal injury to or death of any workman due to accident while engaged in the service or business of the employer, the cause of which accident originates in the employment; but nothing in this section shall be construed to relieve any employer from criminal prosecution for failure or neglect to perform any duty imposed by law."