Mattie L. COPELAND, as Administratrix of the Estate of Roy L. Copeland, Deceased

v.

UNITED STATES of America.

Nancy FLOWERS, as Administratrix of the Estate of Ola Mae Flowers Goosby, Deceased

v.

UNITED STATES of America.

Irving J. COPELAND, as Administrator of the Estate of Edmond Copeland, Deceased

v.

UNITED STATES of America.

Chester HAYES

v.

UNITED STATES of America.

Gladies SHIVERS

v.

UNITED STATES of America.

Stephen SHIVERS

v.

UNITED STATES of America.

Civ. A. Nos. 1198–S to 1203–S.

United States District Court, M. D. Alabama, S. D.

Aug. 15, 1972.

Albert W. Copeland, Hobbs, Copeland, Franco & Screws, Montgomery, Ala., for all plaintiffs.

Joe S. Pittman, Enterprise, Ala., for plaintiffs in Nos. 1198–S, 1199–S, 1200–S, and 1201–S.

Joe C. Cassady, Cassady & Fuller, Enterprise, Ala., for plaintiffs in Nos. 1202–S and 1203–S.

Ira DeMent, U. S. Atty., and Kenneth E. Vines and Wade B. Perry, Jr., Asst. U.

S. Attys., M. D. Ala., Montgomery, Ala., for defendant.

## FINDINGS, CONCLUSIONS AND ORDER

JOHNSON, Chief Judge.

The plaintiffs in these consolidated cases are either persons who were injured or the administrators of the estates of persons killed on February 21, 1970, in a low-rent public housing project owned by the Housing Authority of the town of New Brockton, Alabama. The plaintiffs are claiming, pursuant to the Federal Tort Claims Act, 28 U.S.C. A. § 2680 et seq., liability and damages of the United States for alleged acts and omissions during the construction phase of the project.[1] The cases are now submitted upon the pleadings, the evidence taken orally before the Court, the various exhibits offered and admitted in connection with the testimony of the various witnesses and the briefs and arguments of the parties.[2]

Sometime in 1965 the Housing Authority of the town of New Brockton, Alabama, and the United States entered into a contract wherein the New Brockton Housing Authority undertook the development and operation of the housing project with the United States agreeing to render financial assistance in connection therewith. Pursuant to this agreement, the local New Brockton Housing Authority entered into a contract with an architect in Birmingham, Alabama, to develop plans and specifications and for the general supervision and for the inspection of each phase of the construction of the project. After the plans and specifications had been drawn and had been submitted to and approved by the Department of Housing and Urban Development (HUD) and after bids had been received, the contract for the construction was awarded to Madison Construction Company. The work on the project was commenced in October, 1966, with the final acceptance of the construction being in April, 1967. The United States was not a party to either the contract between the Housing Authority of New Brockton and the architect or the contract between the Housing Authority and the contractor for the construction of the project. Plaintiffs contend, however, that the United States designated one of its employees as an inspector to determine whether the heating and venting system was installed in accordance with the plans and specifications which were drawn by the architect and approved by HUD. The plaintiffs further allege that the inspector negligently approved the

---

1. Early in this litigation the United States filed a motion to dismiss each of these cases, the motion being based upon a failure to state a claim upon which relief can be granted and the applicability of an exclusionary exception to the Federal Tort Claims Act. At that point, the Court had nothing before it except the allegations of the complaints which alleged a duty on the part of the United States in its inspection procedures. Based upon that allegation, the Court noted that where there was a duty to inspect, liability could be predicated upon a failure to exercise due care in the discharge of that duty. The Court further noted that liability for failure to exercise due care could be imposed whether the inspection was done gratuitously or for consideration. See Beasley v. MacDonald Engineering Company, 287 Ala. 189, 249 So.2d 844 (Ala.1971). However, at that time, it was not clear that there was no duty on the part of the United States to make an inspection, and it was not clear that an inspection of the heating system was or was not made either gratuitously or for consideration by representatives of the government. Thus, on the pleadings alone, this Court entered a formal order denying the motion to dismiss filed in each of these cases.

2. No post-trial briefs have been received. The plaintiffs' attorneys were to file a post-trial brief on or before July 29. On July 31, plaintiffs' counsel requested that this time be extended. Even though the time for filing had expired, an additional time was granted. The additional time allowed has now expired without the Court's receiving plaintiffs' brief.

installation of the stoves and venting system.

In February, 1970, Edmond Copeland was one of the tenants in the New Brockton housing project occupying Apartment 15–B. During the first week in February, Edmond Copeland reported to Max Hayes, the Executive Director of the New Brockton Housing Authority, that his heater had "smoked up" his apartment. Mr. Hayes went to the apartment, observed the smoked walls, further observed that the air vent on the heater was clogged with debris, cleaned the air vent, adjusted the vent, then operated the heater for approximately fifteen minutes and determined that it apparently was operating properly. However, by reason of this complaint, Mr. Hayes, the Executive Director of the local authority, called the officials of the Southeast Alabama Gas Company, the company that performed the service on the gas appliances in the project. He requested that they inspect and service the heater.

Approximately one week later Edmond Copeland died. Several members of the Copeland family from throughout the country came to the New Brockton area for the funeral. Some of these people, with the specific permission of the Housing Authority, occupied Apartment 15–B on a temporary basis. On February 21, 1970, approximately two weeks from the date Edmond Copeland had reported his defective stove, Roy L. Copeland and Ola Mae Flowers Goosby were found lying unconscious in Apartment 15–B, and subsequently they died. Chester Hayes and Gladies Shivers were also found in the apartment. There is no question that the inhalation of gases from the defective heater caused the deaths and the injuries. This Court is convinced that the inner liner or sleeve of the double wall vent had become dislocated and was lodged in the vertical run of the wall vent. This caused an almost complete stoppage of the vent, and the fumes of combustion were forced into the room at the loose connection of the single wall pipe and the double wall vent. It is reasonable also to assume from the evidence in these cases that the movement of the inner liner apparently resulted from the heater being moved from position, which disconnected the single wall pipe from the double wall vent. When the heater was moved toward the wall, the single wall pipe forced the inner liner of the double wall vent into the main run of the vent thereby causing the blockage.

The evidence further reflects that the role or function of HUD insofar as its review of plans, specifications and contracts was concerned, as well as the periodic inspections made at the job site during construction, was solely for the purpose of safeguarding the government's financial interest. The evidence is clear that the contractor, the subcontractor, the architect, and the local housing authority officials understood and operated on the theory, in connection with the construction of the project, that there was no contractual or other relationship between the federal government and the architect, the general contractor or the subcontractors. As a matter of fact, the general conditions set forth in the specifications are clear that all instructions and approvals with respect to the work shall be given to the contractor only by the local housing authority or its authorized representatives or agents. The United States did not under such circumstances owe any general duty to the tenants, to prospective tenants, or to those who occupied any of the apartments of the facility, to inspect or supervise the construction, or to require the contractors or subcontractors to build or construct in a certain way. In the absence of any duty on the part of the defendant to inspect and supervise the construction, the plaintiffs in these cases cannot recover.[3] In the gen-

---

3. These cases actually appear to be an afterthought. In Civil Action No. 1071–S, Mattie L. Copeland, as Administratrix of the Estate of Roy L. Copeland, Deceased, brought a civil action in this district for damages, naming as defend-

eral conditions section of the specifications, it is noted that Section 33 provides as follows:

"3. REVIEW BY LOCAL AUTHORITY AND PHA

"The local authority, the PHA, and their authorized representatives and agents shall, at all times, have access to and be permitted to observe and review all work, materials, equipment, payrolls, personnel records, employment conditions, material invoices, contracts, books of accounts, and other relevant data and records; provided, however, that all instructions and approvals with respect to the work shall be given to the contractor only by the local authority or its authorized representatives or agents."

Thus, from all the evidence, including the general conditions section of the specifications, the role of the government inspector was to report to his superiors the progress of the construction project for the sole purpose of protecting the government's financial interest. The government inspector had no authority to change any plans and specifications and any such changes could be approved only by the Housing Authority's architect who had a representative on the job at all times.

Such a reserved right of inspection, and the exercise of that right on the part of the government in these cases, does not render the government liable for any failure on the part of its inspector to discover and report defects such as the hidden defect in the heating system. The function of the government was merely to furnish funds in connection with the construction of this low-rent housing project, and the duty of the

ants the Southeast Alabama Gas District, a Corporation; Wallace-Murray Corporation (the manufacturer of the double wall Metalbestos vent); Housing Authority of the town of New Brockton; Madison Construction Company, Inc. (the general contractor), and L. W. Bodford, d/b/a Ozark Plumbing and Heating Company (the subcontractor for heating). The plaintiff in that case brought suit for the wrongful death of Roy L. Copeland, contending that he died as a result of gas inhalation while an occupant in Apartment 15–B in the New Brockton low-rent housing project. There the plaintiff contended that Roy Copeland's death resulted from a defective ventilation system serving the gas space heater. The negligence of the various defendants was contended as follows: (1) that Madison as general contractor was required to construct a venting system and that the venting system was negligently constructed in that the pipe connecting the heater to the wall vents was not secured as required by the applicable safety code; that Madison as general contractor was negligent in failing to discover the deficiency; (2) that Bodford as subcontractor of the defendant Madison was charged with the actual installation of the stove and venting system, and that the installation was negligently made; (3) that the defendant Southeast Alabama Gas District was called to inspect a malfunction in the gas heater a few days before Roy Copeland

died; that the gas district sent a service representative to Apartment 15–B and that the service representative failed to make any inspection of the venting system of the heater. Against the Southeast Alabama Gas District the plaintiff in that case further contended that in the process of maintaining the heating system, the defendant gas district was negligent in failing to discover the defective condition; (4) against the Housing Authority of the town of New Brockton, the plaintiff contended that the Housing Authority had received a complaint that the heating system was defective, was not operating properly and that the Executive Director personally observed that it was not operating properly and was negligent in failing to repair or have the venting system repaired or to warn plaintiff's intestate of its defective condition; (5) the Wallace-Murray Corporation manufactured the wall vent. Plaintiff contended that this device was negligently designed or manufactured in that the inner liner of the tee portion was constructed in such a way that it could become loose from the inner liner of the vertical stack or pipe and that movement of the heating unit could close the venting apparatus so that ventilation was cut off.

The case was tried to a jury and a verdict returned for all defendants. No appeal was taken from these verdicts and the judgment entered thereon.

inspector for the government was to see that the funds were being properly expended. United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961); Irzyk v. United States, 412 F.2d 749 (10th Cir. 1969); Mahler v. United States, 306 F.2d 713 (3rd Cir. 1962); United States v. Thompson, 293 F.Supp. 1307 (E.D.Ark.1967).

Accordingly, this Court now specifically finds and concludes that the defendant United States of America did not designate one of its employees as an inspector and charge him with the responsibility of determining that the stoves and venting systems in the New Brockton project were installed pursuant to the plans and specifications which HUD had previously approved. This Court further finds and concludes that no employee of the United States undertook gratuitously, or for consideration, to render to the general contractor or subcontractors of the housing project authority, or to the architect for the project, services such as inspecting the installation of the stoves and venting systems in the housing project apartments. The evidence also reflects, and this Court now further specifically finds and concludes, that no employee of the defendant failed to exercise reasonable care in connection with the construction of the New Brockton housing project or any portion thereof. This Court further finds and concludes that as to installations of a technical nature there was no reliance on the United States, or any agency or employee thereof, on the part of the New Brockton Housing Authority, the general contractor, the subcontractors, the architect, or anyone else charged with the installation or inspection of the heating and venting system. Thus, there was no negligence on the part of the defendant that proximately caused or contributed to the death or injuries of any of the plaintiffs' intestates or of the plaintiffs in these actions.

Formal judgment will be entered for the defendant in these consolidated cases.