539 So.2d 229 (1989)
Wilma HODGE and Earnest Hodge
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY.
Linda Carol ABLES and Jimmy Ables
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY.
87-704, 87-739.
Supreme Court of Alabama.
January 13, 1989.
Roger L. Lucas and Marjorie C. Harrison of Emond & Vines, Birmingham, for appellants.
James H. Starnes and E. Martin Bloom of Starnes & Atchison, Birmingham, for appellee.
BEATTY, Justice.
These negligence cases arose from a single accident and have been consolidated on appeal. Appellants Linda Ables and Wilma Hodge were injured on the premises of their employer, Sunbelt Wood Components ("Sunbelt"), when a cart used to load lumber broke apart, causing a pile of lumber to fall on them. They and their husbands brought claims against United States Fidelity and Guaranty Company ("USF & G"), Sunbelt's workmen's compensation insurance carrier, alleging negligence on the part of USF & G in its inspection of the plant prior to undertaking to insure Sunbelt. Following discovery, the trial court granted summary judgment for USF & G, *230 and the Ableses and Hodgeses have appealed.
The appellants allege that USF & G undertook a duty to inspect Sunbelt's premises and that Linda Ables and Wilma Hodge were injured as a result of USF & G's negligence in performing that duty, and they allege particularly that USF & G failed to note that certain carts used in the plant to transport lumber were poorly built and posed serious hazards. USF & G argues that it undertook no such duty for the benefit of Sunbelt or its employees, but rather inspected the plant several months before the insurance policy was issued merely for its own benefit in deciding whether to write Sunbelt's workmen's compensation coverage. Furthermore, USF & G never reported to Sunbelt regarding any "hazards" noted, nor did it make recommendations to Sunbelt as a result of the inspection. Therefore, USF & G argues that neither Sunbelt nor its employees should have relied on the inspection by USF & G as an indication of the safety of the plant.
On the other hand, plaintiffs produced certain evidence which, they maintain, precluded summary judgment.
H.L. McMeans, a USF & G representative, conducted the "prospect survey" of the building in which the carts of the type in question were located. McMeans explained that there were essentially two types of surveys made of the premisesa prospect survey and an ongoing loss control survey. According to him, a prospect survey was made to get underwriting information, although the survey would also identify major hazards on the site for the purpose of underwriting. He added that in the course of prospect surveys, he "might or might not" make recommendations to prevent losses. Apparently, no such recommendations were made to Sunbelt in this instance. McMeans's report, submitted as plaintiff's exhibit one, included a description of equipment and its operation. The report indicated that no imminent danger or major hazards were noted during this inspection.
Plaintiff also submitted the affidavit of Edward L. Delaney, a self-employed safety consultant. After establishing that he had reviewed the evidence, Delaney expressed his opinion that the inquiry conducted by USF & G had been improperly performed. According to Delaney, the general insurance industry practice is to make recommendations on hazards during a "prospective survey" and to forward those to the insured when the coverage is written. Delaney further stated that a proper inquiry in this instance would have revealed that the carts in question were of poor design for their usages and entailed risks of serious injury to workers operating them and necessitated safe working procedures.
In Adams v. Travelers Ins. Co., 494 So. 2d 401, 408 (Ala.1986), this Court quoted from Barnes v. Liberty Mutual Ins. Co., 472 So.2d 1041, 1042 (Ala.1985):
"Common law liability to third parties can arise from the negligent performance of even a voluntary undertaking, Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971). Under current Alabama law, a worker's compensation carrier may be liable when it voluntarily undertakes to inspect an employer's premises for safety. Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 388 (Ala.1980). However, in a suit of this nature, a plaintiff bears the burden of proving (1) that the defendant had a duty, or assumed a duty by voluntarily undertaking the inspection; (2) the scope of that duty; (3) whether the duty was breached; (4) whether there was damage or injury; and (5) whether the injury was proximately caused by that breach. Fireman's Fund, 394 So.2d at 349 (Jones, J., concurring); see also, United States Fidelity & Guaranty Co. v. Jones, 356 So.2d 596 (Ala.1977)."
And, in Armstrong v. Aetna Ins. Co., 448 So.2d 353, 355 (Ala.1983), this Court concluded:
"The tort of negligent inspection is based on the theory that when an insurer undertakes the performance of the duty owed by the insured to a third party, the insurer may be liable to that third-party *231 if the third-party was injured as the proximate result of the insurer's failure to exercise reasonable care in said performance. Restatement (Second of Torts § 324A (1976). Thus, when an insurer undertakes to inspect an insured employer's premises for safety, it assumes the duty of the insured employer to provide a safe place for its employees to work. Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971)."
The Court added:
"When a workmen's compensation carrier inspects its insured's work place, it does so to promote its interest in underwriting, rating, and loss prevention with respect to the policy of insurance. The duty of care to third persons which it assumes, therefore, must be limited. While an action for negligent inspection sounds in tort and is, therefore, not based on the contract of insurance per se, the class of persons who are the intended beneficiaries of the inspection is limited to those covered by the policy. Since the duty in question is one which is gratuitously assumed by the insurer, we opine that the scope of the duty should be concomitant with the class of persons covered by the policy."
A review of the record establishes some evidence (1) that the defendant, USF & G, assumed a duty by voluntarily undertaking the inspection in question; (2) that the scope of the duty included a survey of machinery and equipment in the area in which the lumber carts were located; (3) that the duty was owed to those employees of the class who would be operating those carts; (4) that this duty was breached by the failure to recognize the unsafe character of the carts; and (5) that injury occurred as a proximate cause of the breach of that duty.
The fact that the "prospect survey" was made for the paramount purpose of furnishing underwriting information to the insurance carrier does not control here, for it is clear that safety in plant operations was a factor in that survey. As recognized in Armstrong, supra, it was to USF & G's interest in writing this workmen's compensation policy to apply a proper rating to its risk and to prevent loss by observing any hazardous operations. USF & G's agent, McMeans, noted in his inspection report in some detail the nature of the manufacturing process and the use of the equipment. It is not insignificant that thereafter USF & G issued the policy. Indeed, McMeans testified by deposition that he might make recommendations to prevent losses, and, according to witness Delaney, such was the insurance industry's general practice.
Thus, there is evidence that this inspection was to some degree a "safety" inspection, and that it failed to reveal a condition as to which observation and communication would likely have prevented injury to the plaintiffs. Accordingly, summary judgment was inappropriate. Rule 56, A.R. Civ.P. See Clardy v. Royal Ins. Co., 495 So.2d 58 (Ala.1986) (when evidence presents question of fact, summary judgment is inappropriate).
Let the judgment be reversed and the cause be remanded for further proceedings.
REVERSED AND REMANDED.
JONES, ALMON, ADAMS and HOUSTON, JJ., concur.
MADDOX and SHORES, JJ., dissent.
TORBERT, C.J., and STEAGALL, J., not sitting.
MADDOX, Justice (dissenting).
The trial judge entered an order in this case that reads as follows:

"ORDER
"This case comes on for hearing on [motion for] summary judgment filed by defendant, USF & G, in each of these consolidated cases. The court has been presented with extensive briefs, arguments and evidentiary matter, and has considered them all.
"The plaintiffs, Linda Ables and Wilma Hodge, were injured while working for Sunbelt Wood Components (Sunbelt) in Spruce Pine, Alabama, on October 15, *232 1984. At the time of the injuries, USF & G carried the Workmen's Compensation insurance for Sunbelt. Before that coverage was placed in effect, USF & G, on July 12, 1984, made a prospect survey at the Sunbelt plant where the plaintiffs were injured. In the words of plaintiffs' brief `the survey was conducted for the purpose of determining whether USF & G wanted to write insurance on Sunbelt.' At some point after the survey, but before the injuries, USF & G inspector, H.L. McMeans, failed to observe a hazardous condition which he should have seen and which ultimately injured the plaintiffs.
"There is some evidence that USF & G internal policy and the general insurance practice is for recommendations on hazards identified during a prospect survey to be forwarded to the prospective insured. In this case, that policy or procedure was not known to Sunbelt, was not requested by Sunbelt, Sunbelt did not ask, contract for, or expect that service to be rendered, and, in fact, USF & G did not render any such report to Sunbelt. The only apparent purpose or undertaking of the survey was to provide information to the USF & G underwriting department.
"Defendant urges the court to adopt the position that unless there is a policy in force at the time of the inspection, a negligent inspection of a work place by a Workmen's Compensation insurance carrier can never be actionable. Plaintiffs, on the other hand, apparently argue that any inspection negligently done by a carrier is actionable regardless of the extent of the undertaking by the carrier. The plaintiffs' position would expand the duty owed by an inspecting insurance company, while the defendant's position would restrict the potential liability of one undertaking to act, even gratuitously. It is not necessary, however, to change the law in order to resolve the issues here presented.
"A Workman's Compensation carrier can be liable in tort it if wears `two hats,' that is if it supplies financial responsibility and also negligently provides safety engineering services to the employer. The potential liability arises when the carrier in effect becomes a partner of the employer in assuming the duty of the employer to provide a reasonably safe place to work. Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971). In order to decide whether that duty has been assumed in a particular case, the scope of the duty undertaken must be analyzed. In Baker v. Johnson, 448 So.2d 355 (Ala.1983), an employee of an independent contractor was injured. The court held:
"`When a Workmen's Compensation carrier inspects its insured's work place it does so to promote its interest in underwriting, rating and loss prevention with respect to the policy of insurance. The duty of care to third persons which it assumes, therefore, must be limited. While an action for negligent inspection sounds in tort and is, therefore, not based on the contract of insurance per se, the class of persons who are the intended beneficiaries of the inspection is limited to those covered by the policy. Since the duty in question is one which is gratuitously assumed by the insurer, we opine that the scope of the duty should be concomitant with the class of persons covered by the policy [448 So.2d at 355].'
"Defendant suggests Baker stands for the proposition that if there is no policy there can be no liability. In Baker, however, there was a policy, and more accurately the opinion holds there can be no liability to a person not included in the scope of the undertaking and the duty assumed, even if the injury-causing apparatus was included in the scope of an inspection. The present case is different in its facts, however. Merely because there was no policy at all, it does not necessarily follow that a carrier assumed no duty to anyone. It is the finding of this court that in this case under the facts given, the inspection here was intended to and did inure solely to the benefit of USF & G. That is not to say, however, that if in the course of a prospect *233 survey a carrier undertakes to provide safety engineering services or reports to a prospective insured it could not be liable.
"In Barnes v. Liberty Mut. Ins. Co., 472 So.2d 1041 (Ala.1985), the plaintiff employee was a member of the class undertaken to be protected, but summary judgment was affirmed in part on the grounds that the area and machine involved were not within the scope of the duty of reasonable care undertaken. There the plaintiff was excluded not due to his status but due to the area of the inspection. Adams v. Travelers Insurance, 494 So.2d 401 (Ala.1986), reaffirmed the prior cases on this subject, holding that two of the elements the plaintiff must prove were (1) that defendant has assumed a duty by voluntarily undertaking the inspection, and (2) the scope of that duty. Relying on Barnes, the court held that inspecting a plant not in operation does not extend the scope of the duty undertaken to discovering hazards present when the plant was in operation. An omission to act was thereby held not to be actionable. The refusal to adopt a negligent omission as being actionable was reaffirmed in Clark v. Floyd, 514 So.2d 1309 (Ala.1987).
"In the present case the plaintiffs were employees, not independent contractors as in Baker. The fact there was no policy in force is relevant, but not controlling. The facts here presented show this was a prospect survey only and that only USF & G did receive any report of the survey, that only USF & G relied in any respect upon the survey, and that Sunbelt neither expected, received, or relied upon the survey in any respect. In short, neither Sunbelt nor the plaintiffs were within the scope of USF & G's undertaking. In this case, USF & G did not assume a part of the employer's duty to provide a safe place to work, i.e., it did not put on the `second hat' of safety engineer. There was no policy in force, there was no undertaking to report the survey to Sunbelt, and the report was not made to Sunbelt. Further, there being no undertaking at the time of the inspection and report, no duty arises later to render such report after insurance is written. Again, that is the rule under these facts. A different set of facts, with a broader duty undertaken may yield a different result. In short, even if it be assumed the survey was not completed with reasonable care, that survey was only undertaken `for the purpose of determining whether USF & G wanted to write insurance on Sunbelt.' There was no loss prevention aspect to it, and no duty undertaken to provide plaintiffs with a reasonably safe place to work.
"The Motion for Summary Judgment is, therefore, due to be and [it is] hereby granted.... There being no just reason for delay, it is directed that this judgment be entered as a final judgment under the provisions of Rule 54(b), Ala.R. Civ.P. Any costs incident hereto taxed to plaintiffs.
"DONE AND ORDERED THIS 19[th] day of February, 1988.
 "/s/Arthur J. Hanes, Jr., Circuit
 Judge"
I am of the opinion that Judge Hanes's conclusions of law, based upon the facts of this case, are sound, and that the judgment should be affirmed.
SHORES, J., concurs.