Rel: March 31, 2023

Notice: This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the Reporter of Decisions, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

_____

### 1200485

_____

**Douglas Ghee, as personal representative of the Estate of Billy Fleming, deceased**

**v.**

**USAble Mutual Insurance Company d/b/a Blue Cross Blue Shield of Arkansas and Blue Advantage Administrators of Arkansas**

**Appeal from Calhoun Circuit Court**
**(CV-15-900383.80)**

PARKER, Chief Justice.[1]

Douglas Ghee, as the personal representative of the estate of Billy

---

[1]This case was originally assigned to another Justice and was reassigned to Chief Justice Parker.

Fleming, deceased, appeals a judgment of the Calhoun Circuit Court dismissing Ghee's wrongful-death claim against USAble Mutual Insurance Company d/b/a Blue Cross Blue Shield of Arkansas and Blue Advantage Administrators of Arkansas ("Blue Advantage"). The circuit court correctly dismissed the aspect of Ghee's claim that, on the face of the complaint, was based on an insurance-benefits decision by Blue Advantage. The court erred, however, by dismissing the aspect of Ghee's claim that was based on Blue Advantage's alleged provision of medical advice, because it was not clear from the complaint that that aspect was based on an insurance-benefits decision. Accordingly, we affirm the judgment in part and reverse it in part.

## I. Facts

As required in an appeal of a dismissal under Rule 12(b)(6), Ala. R. Civ. P., the underlying facts before this Court are those alleged in Ghee's operative complaint. See Sumter Cnty. Bd. of Educ. v. University of W. Alabama, 349 So. 3d 1264, 1265 (Ala. 2021). Blue Advantage was the claims administrator for Fleming's employee-health-benefits insurance plan. The plan was subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

In June 2013, Fleming went to a hospital's emergency department and was diagnosed with constipation and fecal impaction. A doctor recommended that he undergo a subtotal colectomy. However, "an agent [of Fleming's surgeon] called [Fleming] and informed him that he could not have the surgery because [Blue Advantage] had decided that a lower quality of care -- continued non-surgical management -- was more appropriate …." Ghee's complaint at p. 5.  After Blue Advantage denied coverage for surgery,

> "[Fleming] and his family then had multiple conversations with agents of [Blue Advantage] in an unsuccessful attempt to convince the company that the higher quality of care (surgery, as recommended by [Fleming]'s doctors) was the more appropriate course. Ultimately, an agent of [Blue Advantage] suggested to [Fleming] that he return to [the hospital] in an attempt to convince hospital personnel and physicians to perform the surgery on an emergency basis."

Id. at p. 6. Fleming returned to the emergency department three times but was not provided the surgery, and he was eventually taken to a different hospital. Fleming died on July 16, 2013, from "septic shock due to peritonitis due to colonic perforation." Id. at p. 8.

Ghee commenced a wrongful-death action against Blue Advantage and other defendants. After multiple appeals to this Court and amendments of Ghee's complaint, the operative complaint alleged:

3

"[Blue Advantage] had or voluntarily assumed ... a duty to act with reasonable care in determining the quality of health care that [Fleming] would receive; a duty not to provide [Fleming] with a quality of health care so low that it knew [Fleming] was likely to be injured or killed; and a duty to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.

"... [Blue Advantage] breached those duties ... as follows:

"a. Negligently providing for a lower quality of healthcare for [Fleming];

"b. Wantonly providing for a lower quality of healthcare for [Fleming];

"c. Breaching the standard of care by (i) failing to provide a higher quality of healthcare to [Fleming] (necessary, life-saving surgery) and (ii) failing to communicate adequately with [Fleming's] healthcare providers regarding his need for surgery.

"... Those breaches combined with the actions of other defendants as a legal cause of death for ... Fleming, in that without the breaches, [Fleming] would have more likely than not survived.

" ... Ghee makes no complaint that [insurance] benefits were denied to [Fleming] .... Ghee's only complaint against [Blue Advantage], as detailed above, involves the quality of the benefit received, specifically that it was of such a low quality (did not include necessary surgery) that it caused [Fleming's] death. ... Ghee does not seek any benefits ... but instead only the wrongful death, punitive damages allowed by Alabama state law.

"... To be clear, Ghee <u>does not</u> seek to hold [Blue Advantage] liable for a mere denial of benefits, <u>but instead</u> seeks to hold it liable for negligently undertaking to take charge of and controlling [Fleming]'s health care, for negligently interjecting itself as a healthcare provider for [Fleming] and then negligently giving [Fleming] medical advice, and for negligently providing a suboptimal standard of care (i.e. passive treatments instead of surgery).

"… [Blue Advantage] did not just make administrative decisions, it interjected itself as [Fleming]'s medical provider, interfered with his treatment, and combined with [Fleming]'s medical providers to proximately cause his death. [Blue Advantage] crossed the line from claims administration into the practice of medicine."

Ghee's second amendment to the complaint. Blue Advantage moved to dismiss Ghee's operative complaint under Rule 12(b)(6), arguing that his claims were defensively preempted by a provision of ERISA, 29 U.S.C. § 1144(a), under this Court's decision in <u>Hendrix v. United Healthcare Insurance Co. of the River Valley</u>, 327 So. 3d 191 (Ala. 2020). The circuit court granted Blue Advantage's motion to dismiss and certified the court's order as a final judgment under Rule 54(b). Ghee appeals.

## II. Standard of Review

"The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief. In making this determination, the Court does not consider whether the plaintiff will ultimately

prevail, but only whether [it] may possibly prevail. ... [A] Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."

Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993) (citations omitted).

Blue Advantage's Rule 12(b)(6) motion to dismiss was based on defensive preemption under ERISA, which is an affirmative defense, see Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999). When a Rule 12(b)(6) motion is based on an affirmative defense, dismissal is proper only if the applicability of the defense is clear from the complaint. Crosslin v. Health Care Auth. of Huntsville, 5 So. 3d 1193, 1195-96 (Ala. 2008).

## III. Analysis

As a plurality of this Court explained in Hendrix v. United Healthcare Insurance Co. of the River Valley, 327 So. 3d 191 (Ala. 2020), defensive preemption under ERISA bars certain state-law claims:

"ERISA governs 'voluntarily established health and pension plans in private industry.' Kennedy v. Lilly Extended Disability Plan, 856 F.3d 1136, 1138 (7th Cir. 2017). It 'comprehensively regulates, among other things, employee welfare benefit plans that, "through the purchase of insurance or otherwise," provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death. ... 29 U.S.C. § 1002(1).' Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

6

"ERISA's express preemption provision, ... 29 U.S.C. § 1144(a), provides that ERISA 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.' State law that may be preempted because it relates to an ERISA employee-benefit plan 'includes all laws, decisions, rules, regulations, or other State action having the effect of law.' 29 U.S.C. § 1144(c)(1). This includes civil causes of action brought pursuant to state law. Aldridge v. DaimlerChrysler Corp., 809 So. 2d 785, 792 (Ala. 2001) ('ERISA's express preemption provision ... "defeats claims that seek relief under state-law causes of action that 'relate to' an ERISA plan."' (quoting Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1215 (11th Cir. 1999))); Seafarers' Welfare Plan v. Dixon, 512 So. 2d 53 (Ala. 1987) (holding that causes of action alleging breach of contract and bad-faith failure to pay insurance benefits were preempted by ERISA). ...

"....

"The preemption language used in § [1144(a)] is 'deliberately expansive.' Pilot Life Ins. Co., 481 U.S. at 46, 107 S.Ct. 1549. It is aimed at '"eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans."' Id. at 46, 107 S.Ct. 1549 (quoting 120 Cong. Rec. 29197 (1974)). See also Egelhoff v. Egelhoff, 532 U.S. 141, 148, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (stating that a 'principal goal[] of ERISA' was 'to enable employers "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits"' and that '[u]niformity is impossible ... if plans are subject to different legal obligations in different States' (quoting Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987))); Kuhl v. Lincoln Nat'l, Health Plan of Kansas City, Inc., 999 F.2d 298, 301 (8th Cir. 1993) ('Consistent with the decision to create a comprehensive, uniform federal scheme

7

for regulation of employee benefit plans, Congress drafted ERISA's preemption clause in broad terms.').

"A state law relates to a benefit plan 'if it has a connection with or reference to such a plan.' Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). A state law has an impermissible connection to an ERISA plan if it '"governs ... a central matter of plan administration" or "interferes with nationally uniform plan administration."' Gobeille v. Liberty Mut. Ins. Co., 577 U.S. 312, 136 S.Ct. 936, 943, 194 L.Ed.2d 20 (2016) (quoting Egelhoff, 532 U.S. at 148, 121 S.Ct. 1322). '"[A] state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."' Weems v. Jefferson-Pilot Life Ins. Co., 663 So. 2d 905, 908 (Ala. 1995) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), quoting in turn Pilot Life Ins. Co., 481 U.S. at 47, 107 S.Ct. 1549)."

327 So. 3d at 193-94, 199.

Nevertheless, the United States Supreme Court has cautioned that the scope of ERISA defensive preemption must be understood in light of Congress's objectives:

"[W]e have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law. Indeed, in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'

8

"... Section [1144(a)] marks for pre-emption 'all state laws insofar as they ... relate to any employee benefit plan' covered by ERISA, and one might be excused for wondering, at first blush, whether the words of limitation ('insofar as they ... relate') do much limiting. If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere.'[2] But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality. ...

"... '[A] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' ... [As to the] question whether the [subject state] laws have a 'connection with' the ERISA plans, ... an uncritical literalism is no more help than in trying to construe 'relate to.' For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections. We simply must ... look ... to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.

"....

"... [Section 1144] indicates Congress's intent to establish the regulation of employee welfare benefit plans 'as exclusively a federal concern.' ... [I]n passing § [1144(a)], Congress intended

"'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal

---

[2]Indeed, "as many a curbstone philosopher has observed, everything is related to everything else." California Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 335 (1997) (Scalia, J., concurring).

> was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.'
>
> "... The basic thrust of the pre-emption clause ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."

New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654-57 (1995) (citations omitted). Accordingly, as stated above, "[a] state law has an impermissible connection to an ERISA plan if it '"governs ... a central matter of plan administration" or "interferes with nationally uniform plan administration."'" Hendrix, 327 So. 3d at 199 (citations omitted). "Pre-emption does not occur ... if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans." District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 n.1 (1992) (citation omitted).

Given these principles, legal scholars have described the line between preempted and nonpreempted claims, in the context of tort claims alleging medical negligence, as follows:

> "If the claim ... is based on the assertion of ordinary malpractice and vicarious liability, not based upon the denial

10

of coverage or benefits, it is simply not preempted. On the other hand, if the claim is that the plan wrongly denied benefits such as hospitalization, that would be a benefits-denied case and preempted, even if the coverage decision was made negligently."

2 Dan B. Dobbs et al., The Law of Torts § 318, at 271 (2d ed. 2011) (footnotes omitted).

"Generally, state tort laws for various types of negligence ... are preempted as they apply to the basic activity of an ERISA plan. ... In claims arising out of physical injury or even death caused by someone related to the plan to a claimant or a [decedent] who was a plan participant, preemption depends on the relationship to the person's ERISA duties. If claims arise because of negligence in the administration of the ERISA plan, then the claim is preempted. However, if the claim is a medical malpractice action, then it is not preempted."

1A Steven Plitt et al., Couch on Insurance § 7:42 (3d ed. 2010) (footnote omitted).

In Hendrix, a three-Justice plurality of this Court applied principles of ERISA defensive preemption to a case in which the plaintiff, like Ghee, alleged that a decedent's ERISA health-insurance-plan administrator had voluntarily undertaken a duty of a health-care provider. In that case, the decedent was injured in an automobile accident and then died after the plan administrator refused to approve payment for treatment recommended by his physician. The decedent's

1200485

personal representative commenced a wrongful-death action against the

plan administrator. As the plurality detailed:

> "[A]fter [the decedent's] treating physician ordered inpatient rehabilitation, representatives of the hospital and a rehabilitation facility 'all contacted [the plan administrator] numerous times in an attempt to get [the decedent] admitted to an inpatient facility.' [The plaintiff] assert[ed] that [the plan administrator] then 'imposed itself as [the decedent's] health care provider, took control of [his] medical care, and made a medical treatment decision that [he] should not receive further treatment, rehabilitation, and care at an inpatient facility.' [The plaintiff] asserted in the complaint that, instead, [the plan administrator] 'made the medical treatment decision that [the decedent] should be discharged to his home ... and receive a lower quality of care (i.e., home health care) than had been ordered by [his] physicians, therapists, and nurses.' Because [the plan administrator] rejected [the decedent's] request for inpatient rehabilitation, [he] was sent home. [The decedent] died ... due to a pulmonary thromboembolism, which, the complaint assert[ed], would not have occurred had [the plan administrator] approved inpatient rehabilitation.

> "... [The plaintiff] alleged that [the plan administrator]

> "'voluntarily assumed one or more of the following duties ...[:] (1) a duty to act with reasonable care in determining the quality of health care that [the decedent] would receive; (2) a duty to not provide to [the decedent] a quality of health care so low that it knew that [the decedent] was likely to be injured or killed; and/or (3) a duty to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.'

12

1200485

"[The plaintiff] alleged further that [the plan administrator]

"'negligently and wantonly breached the standard of care that applied to [the plan administrator's] voluntarily undertaken duties in one or more of the following respects: (a) by providing healthcare for [the decedent] that fell beneath the standard of care; (b) by making the medical treatment decision and mandating that [the decedent] not receive further treatment, rehabilitation, and care at an inpatient facility following his discharge from [the hospital]; (c) by violating a physician's orders which required that [the decedent] receive further treatment, rehabilitation, and care at an inpatient facility following his discharge from [the hospital]; (d) by interfering with [the decedent's] medical care and preventing him from receiving further treatment, rehabilitation, and care at an inpatient facility following his discharge from [the hospital].'

"... [T]he complaint demonstrate[d] that, based on the recommendation of his treating physician ..., [the decedent] wanted to be admitted to an inpatient-rehabilitation facility, that his medical providers requested [the plan administrator] pay for that course of treatment pursuant to an insurance policy that is part of an ERISA-governed plan, that [the plan administrator] denied that request, and that [the decedent] was unable to participate in inpatient rehabilitation because [the plan administrator] refused to pay for it."

327 So. 3d at 194-95.

After surveying relevant federal precedent, the plurality reasoned:

"[The plaintiff] seeks to punish [the plan administrator] for a death that allegedly resulted because of a denial of benefits. Thus, ... [the plaintiff]'s claim 'is, at bottom, "[b]ased on the

13

alleged improper processing of a claim for benefits"' and, if allowed to proceed, would '"interfere[] with nationally uniform plan administration."' Any 'medical treatment decision' made by [the plan administrator] was made in its role as the administrator of the health-benefit plan, not as a health-care provider."

Id. at 201 (citations omitted). The plurality rejected the plaintiff's argument that the claim was not preempted because it involved a medical-treatment decision, reasoning:

"There are no facts alleged in the complaint in the present case supporting [the plaintiff's] conclusory assertion that an agent of [the plan administrator] voluntarily undertook a duty to act as [the decedent's] treating physician by taking 'control' of [the decedent's] treatment …. The complaint makes clear that [the decedent's] treating physician at the hospital recommended inpatient rehabilitation and that he applied for benefits from [the plan administrator] to pay for that treatment, but [the plan administrator] denied that request."

Id. at 203. Accordingly, the plurality concluded that the plaintiff's claim "relate[d] to an ERISA-governed benefits plan" and was therefore defensively preempted under § 1144(a). Id. at 203.

Justice Shaw, joined by Justice Bryan, concurred in the result, writing:

"I am not convinced that the preemption provided by … § 1144(a) bars a wrongful-death action in circumstances where an insurance company, allegedly acting to administer a health-benefit plan, in fact assumes medical care of its

14

insured and by that action causes the death of the insured. However, after reviewing the particular complaint at issue in this case, I am not persuaded that, for the purpose of reviewing the trial court's entry of a dismissal under the applicable Rule 12(b)(6), Ala. R. Civ. P., standard of review, such preemption can be avoided."

Id. at 204 (Shaw, J., concurring in the result). Three Justices dissented, and one Justice recused himself.

Thus, in those separate opinions in Hendrix, a majority of the Court agreed that, under the facts alleged in the complaint, the claim was preempted by ERISA. "[I]f, in [a] prior case, a particular rationale supporting the result was agreed with by [a] majority of judges, even in separate opinions, the zone of their agreement constitutes binding precedent ...." Ex parte Ball, 323 So. 3d 1187, 1188 (Ala. 2020) (Parker, C.J., concurring specially); see, e.g., Bilbrey v. State, 531 So. 2d 27, 31-32 (Ala. Crim. App. 1987) (applying this type of zone-of-agreement analysis to fragmented decision of United States Supreme Court), abrogated on other grounds, State v. Thrasher, 783 So. 2d 103 (Ala. 2000); cf. Holk v. Snider, 295 Ala. 93, 94, 323 So. 2d 425, 426 (1976) ("[T]he resolution of an issue must be concurred in by the requisite number of judges[;] ... here, ... there was a concurrence of five judges in the determination that specific performance was warranted. This is the law of the case and was

15

binding upon the trial court."). Therefore, the binding effect of <u>Hendrix</u> is that, under the allegations in that case -- a wrongful-death claim alleging that an ERISA plan administrator breached the duties of a health-care provider by declining to approve payment for a particular treatment -- such a claim is preempted.

In the present case, certain of the allegations in Ghee's complaint are indistinguishable from the allegations in <u>Hendrix</u>. Ghee alleged that Blue Advantage breached duties of a health-care provider by declining to approve payment for the proposed surgery. Even though that decision may have involved medical judgment, it was a decision about the administration of benefits. Hence, this aspect of Ghee's claim was ultimately an assertion that Blue Advantage was subject to state-law liability for the consequences of its coverage decision. Under <u>Hendrix</u>, such a claim is preempted. Accordingly, we affirm the dismissal of Ghee's claim to the extent that it was based on those allegations.[3]

---

[3]As an alternative basis for reversal of the judgment, Ghee argues that the circuit court should have treated Blue Advantage's Rule 12(b)(6) motion as a summary-judgment motion, and allowed Ghee to conduct discovery, because Blue Advantage attached to the motion various insurance-plan documents that had not been attached to Ghee's complaint. However, under our analysis above, the preemption of the coverage-decision aspect of Ghee's claim is clear on the face of Ghee's

Ghee's claim is not limited to those allegations, however. Unlike the complaint in <u>Hendrix</u>, Ghee's complaint further alleges that, after Blue Advantage had made its coverage decision declining to approve payment for the requested surgery, Blue Advantage then went further and suggested that Fleming return to the hospital's emergency department to try to obtain the surgery on an emergency basis. Ghee argues that his complaint can be read as alleging that Blue Advantage, independently of its decision to deny coverage for the surgery, medically advised him to return to the hospital and seek the surgery on an emergency basis.

In <u>Hendrix</u>, as a result of the caveat in Justice Shaw's special writing, the majority's decision left open the possibility that a claim against an ERISA plan administrator might not be preempted if the plaintiff sufficiently alleges that the administrator, separate and apart

---

complaint; it is not based in any way on the plan documents attached to Blue Advantage's motion. Therefore, any alleged impropriety in Blue Advantage's attachment of those documents, or in the circuit court's consideration of them, is rendered harmless by our above analysis. See <u>Hendrix</u>, 327 So. 3d at 197-98 & n.5 (plurality opinion) (discussing plaintiff's argument that attachment of insurance documents rendered plan administrator's Rule 12(b)(6) motion a summary-judgment motion and noting: "[T]his Court can determine from [the plaintiff]'s complaint alone, without reference to the insurance documents, that her claim against [the plan administrator] 'relate[s] to' the health-benefit plan.").

from the administrative function of processing a claim, negligently provided medical care to the plan beneficiary. See 327 So. 3d at 204 (Shaw, J., concurring in the result) ("I am not convinced that the preemption provided by … § 1144(a) bars a wrongful-death action in circumstances where an insurance company, allegedly acting to administer a health-benefit plan, in fact assumes medical care of its insured and by that action causes the death of the insured.").[4]

Although relevant legal authority is sparse, it confirms that the type of claim contemplated by Justice Shaw's caveat is indeed not preempted. As outlined above, we start with a presumption that ERISA's defensive-preemption provision does not "bar state action in fields of traditional state regulation" involving "'the historic police powers of the States,'" Travelers, 514 U.S. at 655 (citation omitted). See Egelhoff v. Egelhoff, 531 U.S. 141, 151 (2001) (stating, in ERISA defensive-preemption case: "There is indeed a presumption against pre-emption in

---

[4]The plurality opinion in Hendrix alluded to a similar possibility. See 327 So. 3d at 203 (plurality opinion) ("There are no facts alleged in the complaint in the present case supporting [the plaintiff's] conclusory assertion that an agent of [the plan administrator] voluntarily undertook a duty to act as [the decedent's] treating physician by taking 'control' of [the decedent's] treatment ….").

areas of traditional state regulation ...."). This presumption means that such state-law matters are not preempted "'unless that was the clear and manifest purpose of Congress.'" Travelers, 514 U.S. at 655 (citation omitted). To determine whether a state-law cause of action comes within Congress's manifest purpose in enacting § 1144(a), we must consider whether the cause of action, as presented under the facts of the case, "'"governs ... a central matter of plan administration" or "interferes with nationally uniform plan administration,"'" Hendrix, 327 So. 3d at 199 (plurality opinion) (citations omitted).

As explained in Hendrix, to allow a negligence claim based on an ERISA plan administrator's medical decisions made in the course of plan administration would, ordinarily, "interfere[] with nationally uniform plan administration":

> "[The plaintiff's] claim 'is, at bottom, "[b]ased on the alleged improper processing of a claim for benefits"' and, if allowed to proceed, would '"interfere[] with nationally uniform plan administration."' Any 'medical treatment decision' made by [the plan administrator] was made in its role as the administrator of the health-benefit plan .... The fact that a medical judgment is made in the course of denying a request for benefits does not mean that a cause of action seeking recovery for an injury or death resulting from that denial does not 'relate to' the relevant ERISA benefit plan."

Id. at 201 (plurality opinion) (citations omitted). By contrast, if a plan

administrator makes a medical decision outside its role as administrator, not in the course of a benefits determination, that decision is by definition not part of plan administration. Thus, there is no reason to think that allowing a claim based on negligence in such a decision will "interfere[] with nationally uniform plan administration," Egelhoff, 532 U.S. at 148. Hence, although the line between preempted and nonpreempted claims may not be easy to apply in practice, in principle it has been correctly drawn as follows. On one hand, claims "that the plan wrongly denied benefits," Dobbs, supra, or that "arise because of negligence in the administration of the ERISA plan," Plitt, supra, are preempted. On the other hand, claims "based on the assertion of ordinary malpractice," Dobbs, supra, are not preempted.

There is a paucity of similar cases applying this preemption line, but one federal case illustrates when a claim may fall on the nonpreempted side of the line. In Bui v. American Telephone and Telegraph Co., 310 F.3d 1143 (9th Cir. 2002), the plaintiff's decedent was working in Saudi Arabia. Due to a serious health condition, the decedent's doctor told him that he needed to undergo surgery within a week. The decedent tried to determine whether to leave or to stay in

Saudi Arabia for the surgery, and he consulted with a doctor employed by the decedent's employer. The doctor advised the decedent to stay. The decedent checked into a hospital in Saudi Arabia, underwent two unsuccessful operations, one of which had never been performed at that hospital, and died. Id. at 1145-46.

The plaintiff sued the decedent's employer, alleging that the employer (through its doctor) negligently advised the decedent to have the surgery in Saudi Arabia. The trial court entered a summary judgment for the employer, ruling that the claim was defensively preempted under ERISA (§ 1144). Id. at 1146.

The United States Court of Appeals for the Ninth Circuit held that, given the procedural posture of the case, the claim could not be conclusively determined to be preempted. Id. at 1146, 1152-53. The court observed, consistently with our above analysis, that

> "[m]edical malpractice is one traditional field of state regulation that several circuits have concluded Congress did not intend to preempt. We join the Third, Fifth, and Tenth Circuits in holding that ERISA's preemption clause, 29 U.S.C. § 1144, does not preempt actions involving allegations of negligence in the provision of medical care ....

> "... [W]e look to the behavior underlying the allegations in the complaint to determine whether ERISA preempts a plaintiff's claims. If a claim alleges a denial of benefits, ERISA

21

preempts it. A denial of benefits involves an administrative decision regarding coverage. ... [I]t is clear that ERISA preempts suits predicated on administrative decisions. Subjecting such decisions to an individual state's laws would subvert the intent of Congress to allow for the uniform administration of ERISA benefits ... by requiring administrators to follow many state laws instead of one federal law[ and] by interfering with the relationship between ERISA administrators and beneficiaries ....

"If a claim alleges medical malpractice, however, ... ERISA does not preempt it and ... state law governs. ... [I]t is clear that state medical malpractice standards should not be preempted. They do not mandate employee benefit structures or their administration[ and] do not preclude uniform administrative practices .... In addition, they are state standards of general application that do not depend upon ERISA. Finally, they will not affect the relationships between principal ERISA participants when acting in their roles as principal ERISA participants. In short, they do not impinge upon Congress's stated goal for ERISA: to ensure uniform administrative enforcement."

Id. at 1147-48 (footnotes omitted).

In light of these principles, the court held that, given the facts before the trial court on the employer's summary-judgment motion, the claim based on the employer's negligent medical advice could not be conclusively determined to be preempted. Among other things, "it [was] unclear from the ... record whether [the employer] was acting as a direct service provider or an administrator" when it gave the advice. Id. at 1152. The court explained that "[t]he fact that [the employer] may have acted

22

as an administrator at other times is irrelevant. What matters is the hat it was wearing during the time it committed the acts of which [the plaintiff] complains." Id. at 1153. And the plaintiff had "shown that a genuine issue of material fact exist[ed] regarding whether [the employer] was wearing the hat of an administrator or the hat of a service provider" when it gave the medical advice. Id.

Although Bui was decided in a summary-judgment posture, the analysis in this case is very similar. Because this is an appeal of an order on a motion to dismiss, we must view the allegations of the complaint in the light most favorable to Ghee. Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993). Further, because the dismissal was based on an affirmative defense, we can affirm only if the applicability of the defense is clear from the complaint. Crosslin v. Health Care Auth. of Huntsville, 5 So. 3d 1193, 1195-96 (Ala. 2008). And similarly to the facts in Bui, here it is not clear from the complaint that Blue Advantage was acting within its role as plan administrator, in the course of plan administration, when it advised Fleming to go to the emergency department. At that time, Blue Advantage had already denied coverage and repeatedly confirmed its decision. Although it is possible to infer that Blue Advantage's agent so

advised Fleming because of a desire to help him obtain coverage for the surgery, it is also possible to infer other motives, or even the absence of any particular motive. Given the posture of this case, it is not clear whether Blue Advantage was acting in the course of plan administration when it advised Fleming.

Finally, we address an aspect of Blue Advantage's argument that requires a clarification. Within Blue Advantage's argument that the medical-advice aspect of Ghee's claim was preempted, Blue Advantage seems to intermix suggestions that this aspect was simply not viable as a medical-negligence claim. For example, Blue Advantage argues that Ghee's complaint did not establish that Blue Advantage's advice constituted medical services or that the advice caused Fleming's death. However, Blue Advantage apparently conflates the issue of ERISA preemption (an affirmative defense) with the issue whether this aspect of Ghee's claim states a cause of action (establishes the elements of negligence). The latter has no bearing on the former, because an affirmative defense necessarily assumes arguendo that the plaintiff has established the elements of the claim, see Brannon v. BankTrust, Inc., 50 So. 3d 397, 408 (Ala. 2010) ("'An "affirmative defense" is defined as a

"matter asserted by [the] defendant which, assuming the complaint to be true, constitutes a defense to it."' For a position to constitute an affirmative defense assumes that <u>the claim against which it is asserted is, in the absence of the assertion of that defense, a cognizable claim under Alabama law</u>." (citation omitted)). Therefore, Blue Advantage's suggestions about the viability of the medical-advice aspect of Ghee's claim cannot establish that it is preempted; preemption is a separate matter that must be analyzed separately, as we have done above.

For these reasons, it is not clear from the face of the complaint, viewed in the light most favorable to Ghee, that ERISA defensive preemption barred the aspect of his claim that alleged negligent medical advice. Accordingly, we reverse the dismissal of this aspect of the claim.[5]

---

[5]Blue Advantage argues, as an alternative basis for affirmance of the judgment, that Ghee's claim failed to sufficiently state a cause of action for medical malpractice under the Alabama Medical Liability Act ("AMLA"), § 6-5-480 et seq. and § 6-5-540 et seq., Ala. Code 1975, or a cause of action for voluntary undertaking under common law.

Blue Advantage argues that the claim was insufficient under AMLA because it did not establish that Blue Advantage was a "health care provider" as defined by AMLA and because the claim did not comply with AMLA's heightened pleading requirements. But Blue Advantage's argument incorrectly assumes that any claim of negligence that relates in some way to medical care must comply with AMLA. Notably, AMLA

does not create a cause of action; rather, AMLA regulates certain existing common-law causes of action in tort or contract. See § 6-5-551; Collins v. Ashurst, 821 So. 2d 173, 176-77 & n.1 (Ala. 2001); Mobile Infirmary v. Delchamps, 642 So. 2d 954, 957 (Ala. 1994). Specifically, AMLA imposes restrictions on common-law claims against a "health care provider" for "medical injury" "based on a breach of the standard of care." See §§ 6-5-540, -543(a), -544(a), -546, -551; Ex parte Addiction & Mental Health Servs., Inc., 948 So. 2d 533, 535-37 (Ala. 2006); Ex parte Vanderwall, 201 So. 3d 525, 537 (Ala. 2015); Jenelle Mims Marsh, Alabama Law of Damages § 36:45, at 948-50 (6th ed. 2012). If one of those criteria is not true of the plaintiff's claim, that does not mean the plaintiff has no claim; it simply means the claim is not governed by AMLA. See Taylor v. Smith, 892 So. 2d 887, 892-93 (Ala. 2004) (plurality opinion) ("[I]t does not follow that, because a [particular plaintiff] may not sue under [AMLA], such a suit is barred by [AMLA] .... [T]he [plaintiffs] are seeking recovery for damage[] and injuries [that were] not 'medical injuries[]' .... Consequently, [this action] is neither subject to -- nor barred by -- [AMLA]."); cf. Vanderwall, 201 So. 3d at 537 ("'"Just as the Alabama Legal Services Liability Act does not apply to every action against a person who is a lawyer, the AMLA does not apply to every action against a person who is a doctor."'" (citations omitted)). Here, if Blue Advantage is correct that it was not a "health care provider," then the claim was not governed by AMLA. See Ex parte Sawyer, 892 So. 2d 898, 901-02 (Ala. 2004). And if the claim was not governed by AMLA, then it was also not subject to AMLA's heightened pleading requirements. See Brown v. Endo Pharms., Inc., 38 F. Supp. 3d 1312, 1321-22 (S.D. Ala. 2014). Thus, Blue Advantage's argument under AMLA does not support affirming the dismissal of the medical-advice aspect of Ghee's claim.

As for Blue Advantage's contention that this aspect of Ghee's claim failed to state a common-law cause of action for negligence based on a voluntary undertaking, this point was not raised or ruled on in the circuit court. A defendant's reason why a claim fails to state a cause of action (Rule 12(b)(6)) must be raised in a responsive pleading, in a motion for

## IV. Conclusion

We affirm the dismissal of Ghee's wrongful-death claim against Blue Advantage insofar as Ghee sought to predicate liability on Blue Advantage's decision not to pay for the requested surgery or on any other

---

judgment on the pleadings, or at trial. Rule 12(h)(2) ("Waiver or Preservation of Certain Defenses. ... A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."). Such an argument cannot be made for the first time on appeal, even as an alternative basis for affirmance. See 5C Charles A. Wright et al., Federal Practice and Procedure § 1392, at 530 (3d ed. 2004) ("According to the plain language of Rule 12(h)(2), the three enumerated defenses are waived if they are not presented before the close of trial. Thus, for example, they may not be asserted for the first time on appeal."); Sierra v. City of Hallandale Beach, 904 F.3d 1343, 1348 & n.6 (11th Cir. 2018) (holding that appellee could not raise, as basis for affirmance, new argument that appellant's complaint failed to state a claim); AntennaSys, Inc. v. AQYR Techs., Inc., 976 F.3d 1374, 1379 (Fed. Cir. 2020) (appellee raised failure-to-state-a-claim argument for first time on appeal; "Under Rule 12(h)(2), ... the defense of failure to state a claim for relief may be asserted in a responsive pleading or a motion for judgment on the pleadings, or in a motion to dismiss at trial. ... [S]uch a defense may not be presented for the first time on appeal absent 'unusual circumstances.'" (citations omitted)). See generally Arbaugh v. Y&H Corp., 546 U.S. 500, 507 (2006) ("[T]he objection that a complaint 'fail[s] to state a claim upon which relief can be granted,' Rule 12(b)(6), may not be asserted post-trial. Under Rule 12(h)(2), that objection endures up to, but not beyond, trial on the merits ....").

action it took that was clearly part of processing Fleming's claim. We reverse the dismissal only as to the aspect of Ghee's claim that alleged that Blue Advantage negligently advised Fleming to seek the surgery on an emergency basis. We remand for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Bolin, Special Justice,* concurs.

Parker, C.J., concurs specially, with opinion.

Stewart, J., concurs specially, with opinion, which Wise, J., joins.

Mendheim, J., concurs in part and concurs in the result, with opinion.

Bryan, J., and Moore, Special Justice,* dissent, with opinions.

Shaw, Sellers, Mitchell, and Cook, JJ., recuse themselves.

---

*Retired Associate Justice Mike Bolin and Judge Terry Moore of the Alabama Court of Civil Appeals were appointed to serve as Special Justices in regard to this appeal.

1200485

PARKER, Chief Justice (concurring specially).

I write specially to respond to the special writing concurring in part and concurring in the result ("the partial concurrence"), specifically its critique of the main opinion's analogizing this case to Bui v. American Telephone & Telegraph Co., 310 F.3d 1143 (9th Cir. 2002).

Admittedly, there are points of similarity between defensive preemption and complete preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. But there are also fundamental differences between these two kinds of preemption, differences that render the partial concurrence's distinction of Bui inapposite.

Defensive preemption and complete preemption are based on different statutes, serve different purposes, and are determined using different legal tests. As noted in the main opinion, defensive preemption is based on 29 U.S.C. § 1144. That section expressly preempts all state-law causes of action that "relate to" an ERISA employee-benefit plan. § 1144(a), (c)(1). The purpose of defensive preemption is to enable ERISA to provide a uniform nationwide scheme of administration of these plans, by eliminating inconsistent state regulation. See Pilot Life Ins. Co. v.

29

Dedeaux, 481 U.S. 41, 46 (1987); Egelhoff v. Egelhoff, 532 U.S. 141, 148 (2001); Hendrix v. United Healthcare Ins. Co. of the River Valley, 327 So. 3d 191, 199 (Ala. 2020) (plurality opinion). Because of that purpose, the broad test for defensive preemption is whether the state-law cause of action "'"governs ... a central matter of plan administration" or "interferes with nationally uniform plan administration,"'" Hendrix, 327 So. 3d at 199 (plurality opinion) (citations omitted).

In contrast, complete preemption is based on 29 U.S.C. § 1132. That section provides a federal enforcement mechanism for ERISA's administrative scheme. In particular, the section provides private civil causes of action:

"A civil action may be brought --

"(1) by a[n ERISA-plan] participant or beneficiary --

"...

"(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

"...

"(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter [('Protection of Employee Benefit Rights')] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ...."

§ 1132(a). The United States Supreme Court has concluded that § 1132's remedies were intended to be exclusive, completely preempting any state-law cause of action that duplicates, supplements, or supplants them. See Pilot Life, 481 U.S. at 54-56; Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143-45 (1990); Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004). Thus, unlike defensive preemption's broad purpose of eliminating all state regulation that would interfere with ERISA's administrative scheme, complete preemption's purpose is narrower: to make ERISA's own enforcement provisions the exclusive remedies for violations of ERISA and ERISA plans. The test for complete preemption then flows from that purpose. In the context of a state-law claim against a plan administrator for denial of medical-care coverage, the test is whether the claim is based on a duty that is dependent on ERISA or ERISA-plan terms. See Davila, 542 U.S. at 210.

Because of these clear differences between defensive preemption and complete preemption, courts should be careful not to conflate or mingle the two in their analysis. Occasionally, courts have inadvertently slipped into that error. For example, the United States Court of Appeals for the Eleventh Circuit has admitted that it has done so in multiple prior decisions. See Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1288-90 (11th Cir. 2005) (recognizing that court had previously made this error). It appears that the Supreme Court may also have done so in a nondispositive part of Davila. See 542 U.S. at 218-21 & n.6. The Texas case cited by the today's partial concurrence did so as well. See Ambulatory Infusion Therapy Specialist, Inc. v. North Am. Adm'rs, Inc., 262 S.W.3d 107, 113-15 (Tex. App. 2008). And it seems that the Hendrix plurality opinion may have made the same (nondispositive) mistake. See 327 So. 3d at 200, 202-03. Further, I myself made that mistake in my Hendrix dissent, arguing that a claim had not been shown to be defensively preempted because it was not clearly supplanted by the civil-enforcement mechanism of § 1132. See id. at 204-05 (Parker, C.J., dissenting).

That mistake is easy partly because there are genuine points of connection between the two kinds of preemption. First, in general, the set of completely preempted state-law causes of action is a subset of the set of defensively preempted state-law causes of action. See Cotton, 402 F.3d at 1281 & n.14, 1288-89, 1292; Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1344 (11th Cir. 2009). This is because, if a state-law cause of action is completely preempted because it is essentially for a violation of ERISA or an ERISA plan, then ordinarily that cause of action will "'"govern[] ... a central matter of plan administration" or "interfere[] with nationally uniform plan administration,"'" Hendrix, 327 So. 3d at 199 (plurality opinion) (citations omitted), and thus also be defensively preempted. See Cotton, 402 F.3d at 1281 n.14.[6] However, because complete preemption is a subset of defensive preemption, the logic does not work in the other direction. See id. at 1281 & n.14, 1289. Specifically, the fact that a cause

---

[6] I say "in general" and "ordinarily" because there are statutory exceptions to defensive preemption that apply to specific kinds of state regulation. See § 1144(b)(2)(A) ("insurance, banking, or securities"), (4) ("criminal law"). For cases within those exceptions, complete preemption may apply even though defensive preemption does not. See Cotton, 402 F.3d at 1281 n.14.

of action "'"governs ... a central matter of plan administration" or "interferes with nationally uniform plan administration,"'" <u>Hendrix</u>, 327 So. 3d at 199 (plurality opinion) (citations omitted), and thus is defensively preempted, does not always mean that that cause of action depends on an ERISA(-plan) duty and thus is completely preempted. Therefore, under a given set of facts, the inapplicability of complete preemption does not logically support an argument either for or against the applicability of defensive preemption. Hence, crucially as to the partial concurrence's distinction of <u>Bui</u>, the presence of certain facts that might negate complete preemption does not imply that defensive preemption is less likely than it would be if those facts were absent. Specifically, the possibility that, under <u>Davila</u>, the presence of an employee-doctor/patient relationship might prevent complete preemption does not imply that the absence of such a relationship supports defensive preemption.

Second, as noted above, for a denial-of-coverage claim, the relevant test for complete preemption is whether the state-law cause of action is based on a legal duty that is dependent on ERISA or the terms of an ERISA plan. See <u>Davila</u>, 542 U.S. at 210. Although that concept of a

dependent duty is the whole test for complete preemption, it is also a factor in analyzing defensive preemption. If a state-law cause of action is based on a duty that is ERISA-dependent, it is likely that allowance of that cause of action would "'"interfere[] with nationally uniform plan administration,"'" Hendrix, 327 So. 3d at 199 (plurality opinion) (citations omitted), and thus that the cause of action is defensively preempted. On the other hand, if the cause of action is based on an independent duty, that may weigh in favor of concluding that the cause of action does not so interfere and thus is not defensively preempted. Again, however, the logical correlation is not one-to-one. So courts must be careful not to assume that the dependent-duty concept functions identically within analysis of complete preemption and defensive preemption.

For these reasons, I believe that the partial concurrence's distinction of Bui is misplaced. Like the present case, Bui was a defensive-preemption case, but the partial concurrence seeks to distinguish it using reasoning from complete-preemption cases and cases that arguably conflated the analysis of the two kinds of preemption.

Last, the partial concurrence attaches undue significance to Billy Fleming's purpose for telephoning USAble Mutual Insurance Company d/b/a Blue Cross Blue Shield of Arkansas and Blue Advantage Administrators of Arkansas ("Blue Advantage"). See ___ So. 3d at ___ ("If there was no administrative aspect to the telephone conversations, and instead they involved dispensing medical advice, it seems ERISA preemption would not apply. On the other hand, the telephone conversations merely could have been attempts by Fleming to get Blue Advantage to reconsider its benefits determination."). In determining whether Blue Advantage's advice was in the course of plan administration, a court's focus must be on the nature of that act under all the circumstances. Fleming's purpose is merely one relevant circumstance. Even if Fleming's sole purpose was to get Blue Advantage to reconsider its coverage decision, that does not necessarily mean that Blue Advantage's advice was about coverage.

STEWART, Justice (concurring specially).

Although I concur fully with the main opinion, I write to emphasize my belief that today's decision might have been reached by simple application of the pertinent standard of review. The standard for granting a motion to dismiss based on an affirmative defense such as preemption is "'"whether the existence of the affirmative defense appears <u>clearly</u> on the face of the pleading."'" <u>Crosslin v. Health Care Auth. of Huntsville</u>, 5 So. 3d 1193, 1195 (Ala. 2008) (quoting <u>Jones v. Alfa Mut. Ins. Co.</u>, 875 So. 2d 1189, 1193 (Ala. 2003), quoting in turn <u>Braggs v. Jim Skinner Ford, Inc.</u>, 396 So. 2d 1055, 1058 (Ala. 1981)). Here, it is clear from the face of the complaint that those claims that are based on the alleged wrongful denial of insurance benefits by USAble Mutual Insurance Company d/b/a Blue Cross Blue Shield of Arkansas and Blue Advantage Administrators of Arkansas ("Blue Advantage") are, indeed, preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. However, Douglas Ghee, as the personal representative of the estate of Billy Fleming, deceased, also alleges that Blue Advantage -- beyond its role as a health-benefits plan administrator -- negligently provided medical advice to Fleming.

Viewing the allegations of that claim most strongly in Ghee's favor, as we must, the face of the complaint does not clearly and unequivocally establish that Ghee's claim alleging direct medical negligence by Blue Advantage is preempted under ERISA. Therefore, the dismissal as to that claim must be reversed.

Wise, J., concurs.

MENDHEIM, Justice (concurring in part and concurring in the result).

I agree with the main opinion to the extent that it concludes that "certain of the allegations in [the] complaint are indistinguishable from the allegations in Hendrix[ v. United Healthcare Ins. Co. of the River Valley, 327 So. 3d 191 (Ala. 2020) (plurality opinion)]," because Douglas Ghee, as the personal representative of the estate of Billy Fleming, deceased, alleged that USAble Mutual Insurance Company d/b/a Blue Cross Blue Shield of Arkansas and Blue Advantage Administrators of Arkansas ("Blue Advantage") "breached duties of a health-care provider by declining to approve payment for the proposed surgery. Even though that decision may have involved medical judgment, it was a decision about the administration of benefits." ___ So. 3d at ___. I also agree that Ghee's assertion that Blue Advantage employees suggested to Fleming during telephone conversations that he should return to the emergency room to obtain the colectomy on an emergency basis presents an allegation that Hendrix did not and that "it is not clear from the complaint that Blue Advantage was acting within its role as plan administrator, in the course of plan administration, when it advised Fleming to go to the emergency department." Id. at ___. In other words,

the main opinion correctly concludes that the complaint's allegations do not completely foreclose the possibility that Blue Advantage employees provided medical advice to Fleming -- a claim that would not be preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. -- rather than potentially being negligent in the administration of its ERISA plan -- which would be preempted.

However, in reaching the foregoing conclusion, the main opinion draws an inapt parallel to Bui v. American Telephone & Telegraph Co., 310 F.3d 1143 (9th Cir. 2002). The medical-advice claim the Bui court concluded was not preempted is simply not analogous to Ghee's claim. Thus, although I agree with the main opinion's ultimate conclusion that we cannot determine whether Ghee's claim based on his telephone-conversation allegations should be preempted at this motion-to-dismiss stage of the litigation, I concur only in the result to that portion of the main opinion.

The Bui court summarized its relevant facts as follows:

> "In the week before his death, [Hung M.] Duong knew his situation was critical. His physician had told him that he needed to undergo surgery, either in Saudi Arabia or elsewhere, in less than a week. Duong attempted to determine

whether he should remain in Saudi Arabia for surgery or whether he should leave the country to seek treatment.

"Duong consulted SOS [Assistance, Inc.], a company with which his employer, [American Telephone & Telegraph Company and Lucent Technologies, Inc. ('AT&T/Lucent')], had contracted to provide emergency medical advice and evacuation services. SOS personnel told Duong that evacuation presented a greater risk than remaining in Saudi Arabia for treatment, especially given the quality of the facilities and services available at Erfan Hospital. Thus, SOS advised Duong to remain in Saudi Arabia.

"<u>Duong also consulted with a physician employed by AT&T/Lucent, Dr. Waugh. Waugh seconded SOS's recommendation, advising Duong to remain in Saudi Arabia as well.</u>

"....

"Bui asserts that, after offering the above advice and information, SOS and Lucent failed to follow up on Duong's requests for additional information and further advice, as well as his requests for evacuation. When Duong got no response from SOS and Lucent regarding his additional questions and requests, and the date Duong's doctor had given him for surgery was at hand, Duong checked into the Erfan Hospital and submitted to treatment there, after which he died."

310 F.3d at 1145-46 (emphasis added). The <u>Bui</u> court then explained why it did not believe that, at the summary-judgment stage of the litigation, Bui's medical-advice claims involving Dr. Waugh were preempted by ERISA:

"Genuine issues of material fact exist regarding Bui's

41

last two claims against Lucent for negligent medical advice and for delay in responding to Duong. Although ERISA preempts suits based on negligent administrative decisions, including negligent delays in such decisions, it is unclear from the current record whether Lucent was acting as a direct service provider or an administrator when it engaged in the behavior on which Bui bases her claims. <u>Bui has pointed to evidence in the record that raises substantial factual questions regarding Duong's relationship with [Dr.] Waugh, who was unquestionably Lucent's agent and employee. Bui filed an affidavit stating that Waugh gave Duong medical advice regarding whether to stay in Saudi Arabia and that Duong asked Waugh for further advice and evaluation. If Waugh and Duong had a doctor-patient relationship, then Bui may sue Lucent for any medical malpractice its agent committed.</u>[36] Bui's claims may include negligent medical advice and negligent delay in responding to Duong's medical questions, if that delay was made in the course of medically evaluating or treating Duong, rather than in the course of administering the ERISA plan.

"Lucent has countered Bui's evidence that Waugh gave Duong medical advice with nothing save blanket statements that the evidence is unconvincing and that Lucent was an administrator. We may not, on summary judgment, weigh evidence. The fact that Lucent may have acted as an administrator at other times is irrelevant. What matters is the hat it was wearing during the time it committed the acts of which Bui complains. Bui has shown that a genuine issue of material fact exists regarding whether Lucent was wearing the hat of an administrator or the hat of a service provider when Waugh and Duong conferred and when Waugh did not respond to Duong's request for further medical advice and evaluation. Accordingly, summary judgment is inappropriate on Bui's claims against Lucent for negligent medical advice and for negligent delay.

"_____

"[36]See Roach[ v. Mail Handlers Benefit Plan,] 298 F.3d [847,] 850-51 [(9th Cir. 2002)]; Pacificare[ of Oklahoma, Inc. v. Burrage,] 59 F.3d [151,] 155 [(10th Cir. 1995)] ('When an [entity] elects to directly provide medical services or leads a participant to reasonably believe that it has, rather than simply arranging and paying for treatment, a vicarious liability medical practice claim based on substandard treatment by an agent ... is not preempted.') (quoting Haas v. Group Health Plan, Inc., 875 F. Supp. 544, 548 (S.D. Ill. 1994))."

310 F.3d at 1152-53 (emphasis added; some footnotes omitted).

A key difference in the factual allegations in Bui distinguishes them from Ghee's claim based on the telephone conversations Fleming allegedly had with Blue Advantage employees. In Bui, the relevant claims concerned alleged medical advice given by a doctor that Lucent indisputably employed. Specifically, the Bui claims concerned medical advice from a medical provider, Dr. Waugh, plainly making them medical-negligence claims that implicated a duty of care independent of plan administration. Defensive preemption forecloses any state-law claim that "'broadly "supersede[s] any and all State laws insofar as they ... relate to any [ERISA] plan." … 29 U.S.C. § 1144(a) (emphasis added).'" Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1344 (11th Cir. 2009) (quoting Cotton v. Massachusetts Mut. Ins.

1200485

Co., 402 F.3d 1267, 1281 (11th Cir. 2005)). "Necessarily, state law claims

based on the violation of a legal duty independent of ERISA do not 'relate

to' ERISA so as to implicate preemption or federal jurisdiction."[7]

_____

[7]The United States Supreme Court has made a similar observation in relation to complete preemption under ERISA:

"It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' [29 U.S.C. § 1132(a)(1)(B)]. Metropolitan Life[ Ins. Co. v. Taylor, 481 U.S. 58,] 66 [(1987)]. In other words, if an individual, at some point in time, could have brought his claim under [§ 1132(a)(1)(B)], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by [§ 1132(a)(1)(B)]."

Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004) (emphasis added).

In his special writing that seeks to bolster the main opinion's use of Bui, the Chief Justice criticizes me for using Davila, a case that primarily involved ERISA complete preemption, even though Davila plainly also discussed defensive preemption. I find that an odd criticism given that a plurality of this Court in Hendrix specifically observed that,

"[a]lthough Davila was a complete preemption case, it is still helpful in considering whether Hendrix's claim in the present case 'relate[s] to' the health-benefit plan. Indeed, the Supreme Court considered an argument made by the plaintiffs in Davila that their claims did not 'relate to' the ERISA plan involved in that case because, they argued, the ERISA plan

44

administrators had exercised judgment regarding proper medical care. In addressing that argument, the Court noted that benefit determinations under ERISA-regulated plans are 'part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan,' even if those determinations are 'infused with medical judgments.' 542 U.S. at 219, 124 S.Ct. 2488."

327 So. 3d at 200. See also Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1281 (11th Cir. 2005) (noting that, "[a]lthough we address complete preemption in this Part, we will also discuss several defensive preemption cases. These cases are helpful because claims that are completely preempted are also defensively preempted.").

The Chief Justice explains away those cases and others as instances where "courts have inadvertently slipped into th[e] error" of "conflat[ing] or mingl[ing defensive and complete preemption] in their analysis," despite also pontificating about the supposedly "clear differences between defensive preemption and complete preemption." ___ So. 3d at ___ (emphasis added). Regardless, all of those cases indicate that defensive preemption is broader than complete preemption, but that the tests for the two types of preemption potentially overlap in certain cases. The Chief Justice admits as much, observing that, "in general, the set of completely preempted state-law causes of action is a subset of the set of defensively preempted state-law causes of action." ___ So. 3d at ___. Despite this, he insists that "the possibility that, under Davila, the presence of an employee-doctor/patient relationship might prevent complete preemption does not imply that the absence of such a relationship supports defensive preemption." ___ So. 3d at ___. But the point is that in Bui the Ninth Circuit Court of Appeals held that the presence of an employee-doctor/patient relationship negated defensive preemption because that relationship made Bui's claim an assertion of medical negligence. See Bui, 310 F.3d at 1149-50. An assertion of medical negligence was clear in Bui because Duong's doctor was employed by his employer. No such clarity exists on the facts as pleaded by Ghee. The Chief Justice's discursive explication on defensive and complete preemption merely serves to obscure that fact.

Ambulatory Infusion Therapy Specialist, Inc. v. North American Administrators, Inc., 262 S.W.3d 107, 115 (Tex. App. 2008).

In contrast to Bui, it is far from clear that Ghee's claim based on the telephone-conversation allegations involves medical negligence by a health-care provider. According to Ghee's own allegations, the only reason Fleming and his family continued to talk to Blue Advantage was "to convince [Blue Advantage] that the higher quality of care (surgery, as recommended by [Fleming's] doctors) was the more appropriate course." Those efforts failed because, instead of agreeing to pay for the surgery, Blue Advantage employees "suggested to [Fleming] that he return to [the hospital] in an attempt to convince hospital personnel and physicians to perform the surgery on an emergency basis." Thus, it is conceivable that the Flemings' conversations with Blue Advantage employees merely constituted instances in which Blue Advantage denied Fleming medical-insurance benefits under his ERISA plan. In other words, those telephone conversations could be deemed acts of dispensing medical advice within the context of denying an administration of benefits. In Aetna Health Inc. v. Davila, 542 U.S. 200 (2004), the United States Supreme Court made it clear that such a claim is preempted by ERISA.

46

"A benefit determination under ERISA ... is generally a fiduciary act. 'At common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries.' Pegram[ v. Herdrich, 530 U.S. 211,] 231 [(2000)]. .... Hence, a benefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan. The fact that a benefits determination is infused with medical judgments does not alter this result."

Davila, 542 U.S. at 218-19 (most citations omitted; emphasis added).

On the other hand, "truly 'mixed eligibility and treatment decisions'" that fall outside ERISA are those in which "'the underlying negligence also plausibly constitutes medical maltreatment by a party who can be deemed to be a treating physician or such a physician's employer.'" Id. at 221 (quoting Pegram v. Herdrich, 530 U.S. 211, 229 (2000), and Cicio v. Does, 321 F.3d 83, 109 (2d Cir. 2003) (Calabresi, J., dissenting in part)). That plainly describes the situation in Bui in which Duong sought and received medical advice from a doctor employed by his employer; it does not so readily fit this case, in which Fleming simply may have been seeking reconsideration of the benefits decision when he called Blue Advantage employees and they allegedly told Fleming to seek

another way to have the surgery.[8] As the <u>Bui</u> court itself summarized the preemption determination: "If a claim involves a medical decision made in the course of treatment, ERISA does not preempt it; but if a claim involves an administrative decision made in the course of administering an ERISA plan, ERISA preempts it." 310 F.3d at 1149.

Because we must view the allegations in the complaint in the light most favorable to Ghee at this stage of the litigation, I do not believe we can make a determination about preemption based solely on Ghee's allegations. It is possible a set of facts may exist in which Ghee's telephone-conversation allegations support a claim of medical malpractice against Blue Advantage because, as Ghee argues, Blue Advantage had already denied coverage for the colectomy when Fleming

---

[8]The Chief Justice asserts in his special concurrence that I am "attach[ing] undue significance to … Fleming's purpose for telephoning [Blue Advantage]" even though, "[i]n determining whether Blue Advantage's advice was in the course of plan administration, a court's focus must be on the nature of that act under all the circumstances. Fleming's purpose is merely one relevant circumstance." ___ So. 3d at ___. But all I have done is quote Ghee's complaint and infer a potential legal conclusion from those allegations. As I also observe infra in the text, that is not the only potential legal conclusion that may be drawn from the allegations, which is precisely why I agree that the circuit court's judgment should be reversed in part and the case remanded for further factual development.

had the telephone conversations in question with Blue Advantage employees. If there was no administrative aspect to the telephone conversations, and instead they involved dispensing medical advice, it seems ERISA preemption would not apply. On the other hand, the telephone conversations merely could have been attempts by Fleming to get Blue Advantage to reconsider its benefits determination. Indeed, Blue Advantage asserts that if Fleming had been able to receive the surgery on an emergency basis, the surgery would have been covered by his ERISA plan, and so the telephone conversations could have been another iteration of the administration of benefits.[9] In short, the allegations themselves are not specific enough to render an ERISA preemption determination on a motion to dismiss.

---

[9]The parties debate this point in their briefs. In his appellant brief, Ghee claims that, "[h]ere, the not-so-subtle hint [Blue Advantage's] employees gave to [Fleming] and his family was if [Fleming] kept going back to the same place that maybe he could convince them to give him an emergency surgery, and if so, the hospital and/or the physicians would have to eat the costs." Ghee's brief, pp. 28-29. In contrast, Blue Advantage insists that "the plan provided coverage for treatment performed on an emergency basis. ... [Blue Advantage's] suggestion was not an undertaking of medical advice or treatment, but helpful information on where Ghee could go to get the treatment he wanted that was covered under the plan." Blue Advantage's brief, p. 41. Both of those arguments involve factual inferences that are not present in the complaint's allegations.

Therefore, I agree with the main opinion's conclusion that Ghee's claim based on the telephone-conversation allegations should not be preempted by ERISA at this time, but I also believe that further elucidation of the facts in discovery may reveal that preemption is ultimately warranted. However, for the reasons I have stated, I do not believe that Bui is helpful for analyzing the issue of preemption on the facts before us, and I therefore concur only in the result to the portion of the main opinion that reverses the circuit court's judgment.

1200485

BRYAN, Justice (dissenting).

I respectfully dissent. A majority of this Court reverses the judgment of the Calhoun Circuit Court dismissing what the main opinion describes as an "aspect" of a wrongful-death claim asserted by Douglas Ghee, as the personal representative of the estate of Billy Fleming, deceased, against USAble Mutual Insurance Company d/b/a Blue Cross Blue Shield of Arkansas and Blue Advantage Administrators of Arkansas ("Blue Advantage"). The majority concludes that that particular aspect of the claim is not defensively preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. As I explain below, I believe there is only one aspect to Ghee's claim, and I would affirm the circuit court's judgment without addressing the issue of preemption under ERISA.

The parties and amicus curiae all acknowledge that this Court is bound by the decisions of the United States Supreme Court concerning the issue of defensive preemption under ERISA. See Ghee's brief at 20 ("It is up to the U.S. Supreme Court to inform this Honorable Court whether it has interpreted federal law correctly ...."); Blue Advantage's brief at 29; and amicus brief at 16. One United States Supreme Court

51

Justice has observed that that Court's jurisprudence in this area has resulted in an "'accordion-like' test that seems to expand or contract depending on the year ...." Rutledge v. Pharmaceutical Care Mgmt. Ass'n, 592 U.S. ___, ___, 141 S. Ct. 474, 485 (2020)(Thomas J., concurring)(citing Sharon Reece, The Accordion Type Jurisprudence of ERISA Preemption Creates Unnecessary Uncertainty, 88 UMKC L. Rev. 115, 124 n.71 (2019)).

I do not believe it is necessary to address the issue of defensive preemption under ERISA in this case. Consequently, I express no opinion concerning the correctness of the Court's holdings in that regard. For the reasons explained below, Ghee's remaining arguments regarding the viability of his claim do not demonstrate reversible error by the circuit court. Therefore, I conclude that the circuit court's judgment is due to be affirmed.[10]

---

[10]This Court set forth the applicable standard of review in a prior appeal in this case, Ghee v. USAble Mutual Insurance Co., 291 So. 3d 465, 472 (Ala. 2019):

> "'"The appropriate standard of review under
> Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when
> the allegations of the complaint are viewed most

Based on Ghee's appellate arguments, it is clear that the only conduct now forming the basis of Ghee's wrongful-death claim against Blue Advantage is the alleged conversations between Blue Advantage agents and Fleming and his family, during which the Blue Advantage agents purportedly advised Fleming to return to the emergency department of the hospital he had originally visited to try to obtain

---

strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So. 2d 640, 641 (Ala. 1985); Hill v. Falletta, 589 So. 2d 746 (Ala. Civ. App. 1991). In making this determination, the Court does not consider whether the plaintiff will ultimately prevail, but only whether [it] may possibly prevail. Fontenot v. Bramlett, 470 So. 2d 669, 671 (Ala. 1985); Rice v. United Ins. Co. of America, 465 So. 2d 1100, 1101 (Ala. 1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So. 2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So. 2d 768, 769 (Ala. 1986)."'

"DGB, LLC v. Hinds, 55 So. 3d 218, 223 (Ala. 2010)(quoting Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993)."

emergency surgery. Ghee contends that this conduct did not relate to a claims decision by Blue Advantage and was, therefore, independently actionable under either the Alabama Medical Liability Act ("the AMLA"), § 6-5-480 et seq. and § 6-5-540 et seq., Ala. Code 1975, or the common-law theory of negligent undertakings. See Ghee's brief at 31 ("This is a classic undertaking case."); Ghee's brief at 43 ("[I]n this case, neither the Alabama common law of negligent undertakings, nor the [AMLA], purports to regulate, directly or indirectly, the terms and conditions of any employee benefit plan."); Ghee's brief at 54 ("Negligent undertaking claims are not only common and legitimate in Alabama, they are frequently asserted to hold defendants who undertake to provide services, including medical services, liable for their negligent performance."); Ghee's brief at 55 ("By their very nature, medical malpractice cases are undertaking cases because [the] health care provider nearly always willingly undertakes to provide medical care for a patient."); and Ghee's brief at 56 ("[E]ven if the AMLA does not apply (which it does), this does not mean Ghee would have no Alabama law wrongful death claim arising under a duty separate and distinct from ERISA. To the contrary, cases not controlled by the AMLA are controlled

by the common law, where the undertaking doctrine originates.")(footnote omitted).

The majority does not reach a definitive determination regarding Ghee's AMLA argument and reasons that the Court should not address the voluntary-undertaking argument, concluding that Blue Advantage did not raise an argument concerning that point in the circuit court. See ____ So. 3d at ____ n.5. However, as noted above, these are Ghee's arguments, explaining why, he says, his wrongful-death claim is not defensively preempted by ERISA and is instead based on independent state-law theories of liability. Thus, I see no issue with this Court's considering and addressing these arguments on appeal. Moreover, I believe the circular logic of the analysis in the main opinion demonstrates why doing so would be preferable to deciding this case based on the doctrine of defensive preemption under ERISA.

I first note that the majority concludes that Blue Advantage's alleged advice that Fleming return to the emergency room is the only aspect of Ghee's claim that is not defensively preempted by ERISA. Based on this Court's decision in Hendrix v. United Healthcare Insurance Co. of the River Valley, 327 So. 3d 191 (Ala. 2020)(plurality opinion), the

majority notes the possibility that independent state-law negligence claims may not be defensively preempted by ERISA. See ____ So. 3d at ____ ("In Hendrix, as a result of the caveat in Justice Shaw's special writing, the majority's decision left open the possibility that a claim against an ERISA plan administrator might not be preempted if the plaintiff sufficiently alleges that the administrator, separate and apart from the administrative function of processing a claim, negligently provided medical care to the plan beneficiary."); ____ So. 3d at ____ n.4 ("The plurality opinion in Hendrix alluded to a similar possibility. See 327 So. 3d at 203 (plurality opinion)('There are no facts alleged in the complaint in the present case supporting [the plaintiff's] conclusory assertion that an agent of [the plan administrator] voluntarily undertook a duty to act as [the decedent's] treating physician by taking "control" of [the decedent's] treatment ....').").

Rather than decide whether Ghee's amended complaint actually alleges such a claim, however, the majority concludes that the Court must "necessarily assume[] arguendo that the plaintiff has established the elements of the claim," ____ So. 3d at ____, and proceeds to decide that Ghee's claim may not be defensively preempted by ERISA. Thus,

the majority's preemption conclusion in this case begs the question. In a circular fashion, the majority reasons that Ghee's claim may not be defensively preempted by ERISA if Ghee has adequately alleged an independent state-law cause of action and then assumes arguendo that Ghee has adequately alleged an independent state-law cause of action in order to hold that Ghee's claim, therefore, may not be defensively preempted by ERISA.

Of course, if Ghee's amended complaint does not adequately allege a claim upon which relief can be granted under Alabama law to begin with, there exists no viable claim potentially subject to defensive preemption under ERISA. Thus, I begin my analysis by examining whether Ghee's amended complaint adequately alleges the state-law theories he asserts. Because I do not find Ghee's arguments in that regard persuasive, I do not believe it is necessary to also address the issue of defensive preemption under ERISA in this case, and, as noted above, I express no opinion concerning that issue.

Regarding Ghee's invocation of the AMLA, the primary issue is whether Blue Advantage is a health-care provider for the purposes of the AMLA. See § 6-5-552, Ala. Code 1975 (explaining that the AMLA

"applies to all actions against health care providers based on acts or omissions accruing after June 11, 1987 ...."). Ghee argues that Blue Advantage meets the definition of "other health care provider[]" set out in § 6-5-481(8), Ala. Code 1975, which defines that term as follows: "Any professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services." See Ghee's brief at 56.

In response, Blue Advantage asserts that it is not a professional corporation and that it is not employed by physicians, dentists, or hospitals who are directly involved in the delivery of health-care services. Blue Advantage further contends that it is not a "medical institution," which is defined in § 6-5-481(3) as follows: "Any licensed hospital, or any physician's or dentist's office or clinic containing facilities for the examination, diagnosis, treatment, or care of human illnesses." Blue Advantage also correctly points out that Ghee's amended complaint does not contain allegations that, if true, would establish that Blue Advantage is the type of entity defined either in § 6-5-481(8) or § 6-5-481(3). Thus, there is no basis upon which to conclude that Ghee's wrongful-death claim against Blue Advantage is cognizable under the AMLA because

Blue Advantage is not a "health care provider" within the meaning of the AMLA.

In his reply brief, Ghee does not directly respond to the deficiencies in his alleged AMLA claim noted by Blue Advantage. Instead, Ghee shifts the focus to his alternative common-law theory of liability: "[I]f the AMLA does not apply to Ghee's claims against [Blue Advantage], they would go forward purely under the common law rules unaffected by the AMLA. Indeed, the undertaking doctrine originates from the common law, not the AMLA." Ghee's reply brief at 21-22 (footnotes omitted). It is clear that Ghee's theory of liability is based on his assertion that Blue Advantage acted beyond the claims-administration duties it was otherwise obligated to provide by virtue of Blue Advantage's agreement with Fleming's employer and that Blue Advantage voluntarily assumed an additional duty.

Specifically, as explained above, Ghee has clarified his argument on appeal to assert that his claim is based on his allegation that Blue Advantage's "employees gave [Fleming] medical advice 'to return to [the hospital] in an attempt to convince hospital personnel and physicians to perform the surgery on an emergency basis.'" Ghee's reply brief at 7.

59

Thus, the duty that Blue Advantage allegedly voluntarily assumed was the duty of giving medical advice to Fleming. See Ghee's brief at 17 ("[T]his is a medical malpractice action brought pursuant to the Alabama Wrongful Death Act to vindicate and punish a health insurer, which -- after denying [Fleming]'s claim for benefits -- undertook to give him medical advice on how and when to get a surgery." (emphasis in original)).

Among other authority, Ghee cites this Court's decision in Yanmar America Corp. v. Nichols, 166 So. 3d 70, 84 (Ala. 2014), in support of his argument. In Nichols, this Court stated the following regarding the standard applicable to voluntary-undertaking claims:

"As this Court noted in Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So. 2d 844 (1971), liability for the breach of a duty voluntarily undertaken is governed by Restatement (Second) of Torts § 324A (1965), which states:

"'"Liability to third person for negligent performance of undertaking. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"'"(a) his failure to exercise reasonable care

60

increases the risk of such harm, or

"'"(b) he has undertaken to perform a duty owed by the other to the third person, or

"'"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."'

"287 Ala. at 193, 249 So. 2d at 847 (quoting Restatement (Second) of Torts § 324A). See also Commercial Union Ins. Co. v. DeShazo, 845 So. 2d 766 (Ala. 2002)."

166 So. 3d at 84 (footnote omitted).

Rule 8(a), Ala. R. Civ. P., provides, in relevant part:

"A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks."

The Committee Comments on 1973 Adoption of Rule 8 elaborate:

"Although Rule 8(a) eliminates many technical requirements of pleading, it is clear that it envisages the statement of circumstances, occurrences, and events in support of the claim presented. This is indicated by a central theme running through the rules and can be readily seen by reading certain rules together. See, inter alia, Rules 8(c)-(e), 9(b)-(l), 10(b), 12(b), 6, 12(h), 15(c), 20 and 54(b). This is also evident from the Appendix of Official Forms which also illustrate the ease with which Rule 8(a) pleading requirements may be satisfied. Rule 12(e), which provides for a motion for a more definite statement also shows that the complaint must disclose information with sufficient definiteness. The intent and effect of the rules is to permit

the claim to be stated in general terms. The rules are designed to discourage battles over mere form of statement which often delay trial on the merits or prevent a party from having a trial because of mistakes in statement."

(Emphasis added.) "Although the Alabama Rules of Civil Procedure have established notice pleading, see Rule 8, a pleading must give fair notice of the claim against which the defendant is called to defend." Archie v. Enterprise Hosp. & Nursing Home, 508 So. 2d 693, 696 (Ala. 1987). "It is not the duty of the courts to create a claim which the plaintiff has not spelled out in the pleadings." McCullough v. Alabama By-Prods. Corp., 343 So. 2d 508, 510 (Ala. 1977).

Blue Advantage argues that "nothing in the complaint, as amended, establishes how a suggestion that Fleming go to the doctor to see if he could convince the doctor to perform surgery ... 'caused his death.'" Blue Advantage's brief at 38. Put another way, nothing in Ghee's amended complaint alleges how Fleming's death "result[ed] from" the advice allegedly given by Blue Advantage. See Nichols, 166 So. 3d at 84. Additionally, Ghee's amended complaint does not allege how the advice allegedly given to Fleming by Blue Advantage agents to return to the emergency department of a hospital "increased the risk" of Fleming's ultimate death or why Fleming died "because of [his] reliance" on Blue

1200485

Advantage's alleged advice that he return to the emergency department. Id.

Ghee notes his allegation that Fleming followed Blue Advantage's medical advice by going back several times to the emergency department of the hospital he had originally visited. Ghee states:

"This is strong evidence that, in weighing his options after [Blue Advantage]'s denial, [Fleming] took [Blue Advantage]'s subsequent and repeated medical advice seriously and used his final days repeatedly going back to the [emergency room] and doing exactly what [Blue Advantage]'s employees told him to do. As such, the course of [Fleming]'s last days was irrevocably changed by [Blue Advantage]'s voluntar[il]y undertaken post-denial conduct. [Fleming] followed the medical advice of the people he thought were giving him the best medical guidance. Notably, [Fleming] and his family ultimately turned to another hospital, ... but by [that] time it was too late. Based on this evidence, the jury could reasonabl[y] conclude that if [Blue Advantage] had not interfered, [Fleming] and his family would likely have [gone] to [the other hospital] sooner, and [Fleming] would have lived."

Ghee's brief at 29-30 (emphasis added).

Thus, on appeal, it appears that Ghee is contending that Blue Advantage should have advised Fleming to attend a different hospital than the one he originally visited and that Blue Advantage's failure to do so was a failure to exercise reasonable care because, if Fleming had gone to the different hospital first after speaking with Blue Advantage's

63

agents, it is more likely that Fleming would have obtained the necessary surgery and, therefore, more likely that Fleming would have lived.

The first problem with Ghee's contention is that none of these allegations are actually stated in Ghee's amended complaint. Moreover, although the applicable standard of review dictates that all reasonable inferences favorable to Ghee be entertained at this stage in the proceedings, see Ghee v. USAble Mut. Ins. Co., 291 So. 3d 465, 472 (Ala. 2019), nothing in the allegations actually asserted in Ghee's amended complaint give rise to the salient inferences Ghee draws on appeal. Specifically, there is no reason to infer from Ghee's actual allegations that the other hospital he visited would have performed the requested surgical procedure if Fleming had only visited that hospital sooner; indeed, it is undisputed that Fleming died after visiting that hospital, and there is no allegation that that hospital even attempted to perform the surgery Fleming had requested.

> "'Section 324A(a)[of the Restatement (Second) of Torts, which governs liability for the breach of a duty voluntarily undertaken,] applies only to the extent that the alleged negligence of the defendant "exposes the injured person to a greater risk of harm than had existed previously."' Herrington v. Gaulden, 294 Ga. 285, 288, 751 S.E.2d 813, 816 (2013)(quoting Taylor v. AmericasMart Real Estate, 287 Ga. App. 555, 559, 651 S.E.2d 754, 758 (2007)). ... Liability can be

imposed on one who voluntarily undertook the duty to act only where the actor 'affirmatively either made, or caused to be made, a change in the conditions which change created or increased the risk of harm' to the plaintiff. [Myers v. United States, 17 F.3d 890, 903 (6th Cir. 1994)]. See also Patentas v. United States, 687 F.2d 707, 717 (3d Cir. 1982)('[T]he comment [c] to section 324A makes clear that "increased risk" means some physical change to the environment or some other material alteration of the circumstances.')."

Nichols, 166 So. 3d at 84-85.

Additionally, even assuming that an inference could be drawn that visiting the other hospital first would have increased Fleming's chances of obtaining the relevant surgery, there is no reason to also infer from Ghee's allegations that Blue Advantage should or could have known that the other hospital was more likely to perform the relevant surgery, such that Blue Advantage's failure to advise Fleming to visit that hospital amounted to a failure to exercise reasonable care by Blue Advantage.

Thus, even viewing Ghee's allegations most strongly in his favor, as we are required to do, see Ghee, 291 So. 3d at 472, I cannot conclude that his amended complaint gives Blue Advantage "fair notice of the claim against which [it has been] called to defend." Archie, 508 So. 2d at 696. Moreover, "[i]t is not the duty of the courts to create a claim which the plaintiff has not spelled out in the pleadings." McCullough, 343 So. 2d at

510. Therefore, it would be inappropriate for this Court to supplement Ghee's amended complaint with additional allegations in an attempt to create for him an adequate "statement of circumstances, occurrences, and events in support of the claim presented." Committee Comments on 1973 Adoption of Rule 8. Because the allegations set out in Ghee's amended complaint are insufficient to allege a common-law voluntary-undertaking claim against Blue Advantage based on the alleged advice given by Blue Advantage to Fleming and his family, Ghee has failed to demonstrate reversible error by the circuit court in granting Blue Advantage's motion to dismiss for failure to state a claim upon which relief could be granted under Alabama law.

As explained above, I express no opinion regarding whether Ghee's wrongful-death claim against Blue Advantage is defensively preempted by the provision of ERISA codified at 29 U.S.C. § 1144(a). Because Ghee has failed to demonstrate the viability of his claim under Alabama law, he has failed to demonstrate reversible error by the circuit court in dismissing his complaint, and I believe it is unnecessary to address the doctrine of federal preemption under the circumstances of this case. Therefore, I would affirm the circuit court's judgment, and I respectfully

dissent from the majority's decision to reverse the judgment.

1200485

MOORE, Special Justice (dissenting).

I agree with Justice Bryan that the judgment dismissing the complaint, as amended, is due to be affirmed based on the legally valid ground that it fails to state a claim upon which relief can be granted under Alabama law. See Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So. 2d 1013, 1020 (Ala. 2003) ("[T]his Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court."). By merely advising Billy Fleming to return to the emergency department of the hospital that he had originally visited to try to obtain emergency surgery, the unnamed agent of USAble Mutual Insurance Company d/b/a Blue Cross Blue Shield of Arkansas and Blue Advantage Administrators of Arkansas ("Blue Advantage") did not thereby form a health-care provider/patient relationship with Fleming or undertake to render any professional medical service to Fleming that would render Blue Advantage liable for wrongful death under the Alabama Medical Liability Act ("the AMLA"), Ala. Code 1975, § 6-5-480 et seq. and § 6-5-540 et seq. See generally Estate of Kundert v. Illinois Valley Cmty.

Hosp., 964 N.E.2d 670, 677, 358 Ill. Dec. 1, 8 (Ill. Ct. App. 2012). Because the amended complaint fails to state an actionable claim for medical malpractice under Alabama law, I see no need to discuss whether a valid medical-malpractice claim is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.